## William P. Hooper *vs.* Samuel Emery *et al.*

Towns derive all their power from legislative enactments, and all their duties are imposed thereby.

Towns can grant, assess and collect only such sums of money, as they shall judge necessary for the settlement, maintenance, and support of the ministry, schools, the poor, for the making and repairing of highways, "and other necessary charges arising within the same town."

Towns have no right to give away money collected of the inhabitants by taxation.

The selectmen are neither required or permitted to violate the law by paying over money of the town in obedience to an *illegal vote* of such town.

Towns have no right to divide among the inhabitants thereof, according to families, the money received under the *statute* of 1837, *c.* 265, entitled "An act providing for the disposition and repayment of the public money, apportioned to the State of *Maine*, on deposit, by the government of the *United States.*"

THE case came before the Court on a statement of facts, which sufficiently appear in the opinion of the Court.

There was a brief argument by

*Fairfield & Haines*, for the plaintiff, and by

*A. G. Goodwin*, for the defendants.

The opinion of the Court was drawn up, and delivered the week following, at the adjourned term in *Cumberland*, by

SHEPLEY J. — This is an action of *assumpsit*, brought to recover a sum of money alleged to be due from the defendants to the plaintiff. The facts are agreed; and from the agreement of the parties it appears, that at a legal meeting of the inhabitants of the town of *Biddeford*, qualified to vote in town affairs, on the fourth day of *April*, 1837, a vote was passed to receive the money apportioned to the town under the act of the eighth of *March*, 1837, *c.* 265, entitled "An act providing for the disposition and repayment of the public money, apportioned to the State of *Maine*, on deposit, by the government of the *United States.*" And the defendants were chosen trustees to receive and "appropriate it." At the same meeting, a vote was passed, that the money so received should "*be divided among the inhabitants of the town according to families.*" The defendants, before the commencement of this suit, received

the money apportioned to the town of *Biddeford ;* and on demand being made by the plaintiff, an inhabitant of said town and having a family, they refused to pay to him any portion thereof, assigning as a reason, " that the town could not legally make such a disposition of it:"

If the plaintiff is entitled to recover any thing, the amount to be recovered is agreed. The parties agree, also, to waive all objections to the form of the process and mode of proceeding ; and judgment is to be rendered according to the rights of the parties.

The first section of the act of the eighth of *March,* referred to, provides, " that the portion of the public money of the *United States,* which shall be received by the Treasurer of this State," " shall be deposited with the several cities, towns, and plantations thereof *upon the conditions and in the manner specified in this act.*" The provisions of the second section are, " that the condition on which any city, town, or plantation shall receive its proportion of said money shall be, that whenever the whole, or any part thereof shall be required for the purposes, and demanded in the manner prescribed in the aforesaid act of Congress, [being the act of the twenty-third of *June,* 1836, entitled " an act to regulate the deposit of the public money,"] it shall be promptly and faithfully refunded to the State within sixty days after notice for such repayment shall have been given it by the Treasurer of the State."

The eighteenth section is, " that any city, town, or organized plantation, is hereby authorized to appropriate its portion of the surplus revenue, or any part thereof, for the same purposes, that they have a right to any moneys accruing in the treasury from taxation ; also to loan the same in such manner as they deem expedient, on receiving safe and ample security therefor."

The thirteenth section of the act of Congress referred to provides, " that the money which shall be in the treasury of the *United States* on the first day of *January,* 1837, reserving the sum of five millions of dollars, shall be deposited with the several States," " on the terms hereinafter specified ; and the Secretary of the Treasury shall deliver the same to such Treasurer, or other competent authorities, on receiving certificates of deposit therefor, signed by such competent authorities, *which certificates* shall express the usual and legal obligations, *and pledge the faith of the State for*

*the safe keeping and repayment thereof*, and shall pledge the faith of the States receiving the same to pay the said moneys, and every part thereof, from time to time, whenever the same shall be required by the Secretary of the Treasury for the purpose of defraying any wants of the public treasury beyond the amount of five millions aforesaid."

The language of the act of Congress clearly exhibits the rights respectively of the *United States*, and of the States, in such surplus money. The right of property remains with the *United States*; while the right of use, keeping it safely, is yielded to the States. It is but a deposit with the States, requiring only a return in kind; not a return of the same coin. The States can make use of the money without accounting for any thing more, than the original sum received. Beyond this their rights do not extend. The faith of the State is pledged "for the safe keeping and re-payment thereof," when required according to the provisions of the act. This construction of the act is recognized by the legislature of this State, in the act of the eighth of *March*, providing that the money "shall be deposited with the several cities, towns, and plantations thereof," and requiring that "it shall be promptly and faithfully refunded to the State," whenever demanded of the State "in the manner provided in the aforesaid act of Congress."

This State had the right to prescribe the conditions upon which the municipal corporations should receive the money; and to define and limit their powers in relation to the use and employment of it. This has been done by the enactments before recited; and these corporations have no power over it, not derived from the provisions of the act of the eighth of *March*.

"The inhabitants of every town in this State are declared to be a body politic and corporate" by the statute; but these corporations derive none of their powers from, nor are any duties imposed upon them by, the common law. They have been denominated *quasi* corporations, and their whole capacities, powers, and duties are derived from legislative enactments. They cannot therefore appropriate this money in any other manner, than is provided in the act of the eighth of *March*. The manner in which it can be appropriated is clearly pointed out in the clause "that any city, town, or organized plantation is hereby authorized to appropriate its

portion of the surplus revenue, or any part thereof, *for the same purposes, that they have a right to any moneys accruing from taxation;* also, to loan the same in such manner as they deem expedient, *on receiving safe and ample security therefor.*"

The town of *Biddeford* has not attempted to loan it, and their rights in that respect do not necessarily come before the Court in this case. But as it has been suggested by the counsel for both parties, that the expression of an opinion upon that clause of the statute may prevent further litigation, the Court does not regard it as a departure from duty to express its opinion, that the only loans authorized by the act, are those made *bona fide* "on receiving safe and ample security therefor." No loans can be regarded as legally made by the corporations, unless the security taken be both safe and ample.

Whether the town could legally divide it among the inhabitants "according to families," is the direct question for consideration. And it is to be determined by ascertaining, whether they can so appropriate "moneys accruing in the treasury from taxation;" because it can only be appropriated according to the express terms of the act "for the same purposes."

Towns can appropriate moneys derived from taxation only to the purposes for which they are authorized by law to assess and collect them. The legislature has determined the purposes or uses for which money may be granted, assessed, and collected; and if it can be appropriated to different purposes after it has been collected, then the limitation upon the assessment and collection of it becomes ineffectual and void; because the town has only to express one object in the grant of the money, assess and collect it for that, and then expend it upon objects wholly different. The intention of the limitation was to prevent money from being assessed and collected for other objects, than those named in the laws; and this intention cannot be defeated by a misapplication of the money by way of appropriation. The limitations upon the appropriation, and upon the collection, being the same, when the money is derived from taxation, it becomes necessary to examine the statute provisions respecting the grant, assessment, and collection of money. In the sixth section of the act of the 19th of *June*, 1821, *Rev. Stat. c.* 114, the purposes for which money may be granted, are

Hooper v. Emery.

thus expressed : " the citizens of any town," " legally qualified to vote," " may grant and vote such sum or sums of money as they shall judge necessary for the settlement, maintenance, and support of the ministry, schools, the poor, and other necessary charges arising within the same town, to be assessed upon the polls and property within the same as by law provided." Towns have also the power to grant and assess money for making and repairing highways; and they have been occasionally authorized to grant money for other purposes, by special enactments; but those purposes have been defined in the acts giving the power, and no authority can be derived from them to authorize any appropriation of the money referred to in this case. It cannot be contended, that the town of *Biddeford*, by the vote recited, has applied the money to the support of the ministry, schools, or the poor. Nor is there any good reason for asserting, that it has been applied to any " necessary charges arising within the same town ;" because no intimation is afforded by the vote, or by the facts agreed, that the " families " had charges or claims of any kind against the town ; and such an extraordinary state of the affairs of any town, cannot be presumed.

The case presented by the vote can be regarded only as a donation of the money to the " inhabitants of the town according to families." By a division according to " families" must be understood a division *per capita*, or by numbers; the word families being used in such a manner as to indicate clearly, that the term is derived from those parts of the same act, which provide for " ascertaining the population of the several cities, towns and plantations" by taking the number " of the persons belonging to such family." If towns cannot legally grant, assess, and collect money, and when it has been received, divide it by donation among the families according to numbers ; then the money received under the act of the 8th of *March* cannot be so divided ; because the appropriation of it is restricted by the act to " the same purposes, that they have a right to any money accruing in the treasury from taxation." To contend, that towns have the power to assess and collect money for the purpose of distributing it again according to numbers, is to ask for a construction, not only entirely unauthorized by the language of any statute, but in direct opposition to the language of limitation

employed in giving power to the towns to grant money. It not only does this, but it asks the Court to give a construction to the statutes, which would authorize towns, if so disposed, to violate " the principles of moral justice." For if the right to assess and collect money is without limit, it would not be difficult to continue the process of collection and division until the whole property held by the citizens of the town, had passed into, and out of the treasury ; and until an equalization of property had been effected, as nearly, as it could be expected to be accomplished by placing it all in one common fund, and then dividing it by numbers, or *per capita*, without distinction of sex or age. Such a construction would be destructive of the security and safety of individual property ; and subversive of individual industry and exertion. It would authorize a violation of what is asserted in our " declaration of rights" to be one of the natural rights of men, that of " acquiring, possessing and protecting property." Such a construction would authorise a violation also of that clause in the constitution of this State, which provides, that " private property shall not be taken for public uses without just compensation ; *nor unless the public exigencies require it.*" No public exigency can require, that one citizen should place his estates in the public treasury for no purpose, but to be distributed to those, who have not contributed to accumulate them, and who are not dependant upon the public charity.

A construction of the statutes, which denies to the towns such powers, must commend itself to the judgment of every reflecting mind. It is not without the sanction of judicial authority. The language of our statute was copied from the statute of *Massachusetts* passed 1785, *ch.* 75, *sec.* 7. And that statute had received a judicial construction, while this State was a part of that State.

In the case of *Stetson et al.* v. *Kempton et al.* 13 *Mass. R.* 272, the language of the Court is, " the right of towns to grant or raise money so as to bind the property of the inhabitants, or subject their persons to arrest for non-payment, is certainly derived from statute." In the same case it is said, " in all cases the powers of towns are defined by the *statute* of 1785, *ch.* 75 ;" and that " in relation to the power of raising money and causing it to be assessed and collected, they are restricted to the cases of providing for the poor, for schools, for the support of public worship, and other necessary pur-

poses." And in that case the construction placed upon the terms, " other necessary purposes," was so strict, that the power to assess taxes " for the payment of additional wages allowed to the drafted militia of said town and other expenditures of defence" was denied to the town. In *Dillingham* v. *Snow et al.* 5 *Mass. R.* 547, it is said, " towns are municipal corporations with power to assess and collect money for the maintenance of schools, and of the poor, and for the making and repairing of roads, and for some other purposes." In a later case, it is said, " that it must appear by the vote of the town, that the money raised was for the purposes, for which towns are authorized to assess and collect it." 6 *Pick.* 101. Such a construction does not deprive towns of the right to take and hold real estate in their corporate capacity. That power, however, is derived from a Colonial act, passed so early as the year 1679. 13 *Mass. R.* 371. The principles of construction, stated in *Stetson et al.* v. *Kempton et al.* came before this Court in the case of *Bussey* v. *Gilmore*, 3 *Greenl.* 191 ; and the language of the Court is, " we are entirely satisfied with the principles of that case, and the deductions there drawn." No case has been noticed affording color for a different construction, unless the case of *Ford* v. *Clough et al.* 8 *Greenl.* 334, may be supposed to do it. In that case, it is said, " we apprehend, that perhaps it does not follow necessarily, that a town may not expend, or give away a sum of money lawfully, though they could not legally reimburse the treasury by a tax voted and assessed specially for that purpose."

It will be perceived, that the power to assess and collect, to " give away " is distinctly denied in that case. The power to give away, if it exist at all, must be restricted to cases, where the money comes into the treasury by a gift without restrictions upon the use of it ; or to money, which comes into the treasury, not derived from taxation, and without restrictions upon the appropriation of it. In the case now under consideration there is a limitation restraining the appropriation to " the same purposes that they have a right to any moneys accruing in the treasury from taxation ;" and the power to give it away finds no support in the case of *Ford* v. *Clough et al.*

The plaintiff contends, that the defendants have no right to set up this defence, and that it cannot avail them, it being their duty

to obey their instructions, whether the town had, or had not a legal right to divide the money agreeably to the vote.

It is true, that they are but trustees, and have no property in the fund in their own right.   But trustees, in the execution of their trust, are neither required, or permitted, to violate the laws.   It is sufficient for them to show, that the act required of them is an illegal act.

The plaintiff having no legal right to the money claimed, cannot maintain this action ; and there must be judgment for the defendants according to the agreement of the parties.

---

### NOTE.

By the *statute* of 1838, *ch.* 311, towns were authorized to distribute the money received under the act of 1837, *ch.* 265, "*per capita*, among the inhabitants thereof."