# BELKNAP,

## JANUARY TERM, A. D. 1858.

### EASTMAN v. MEREDITH.

If a building, erected by a town for a town-house, is so imperfectly constructed that the flooring gives way at the annual town-meeting, and an inhabitant and legal voter, in attendance on the meeting, receives thereby a bodily injury, he can not maintain an action against the town to recover damages for the injury.

CASE. No question was raised on the pleadings. The facts were agreed to by the parties, and are sufficiently stated in the opinion of the court.

*H. A. Bellows, Spear, Wm. H. Bartlett,* and *Mugridge,* for the plaintiff, took the following positions:

It was the duty of the town to provide a suitable and safe place for holding town-meetings. Towns have power to purchase and hold real estate for the public use of the inhabitants, and may, by statute, repair meeting-houses belonging to the town. Comp. Stat. 100, secs. 3, 4. They may build and own town-houses, inasmuch as they are necessary and convenient for the transaction of public business; and, having the power, they are bound to exercise it. The law requires town-meetings to be held annually, and the duty of the town to provide a suitable place for holding them is a necessary consequence. Comp. Stat. ch. 34; *Spaulding* v. *Lowell,* 23 Pick. 77; *Stetson* v. *Kempton,* 13 Mass. 279; *Willard* v. *Newburyport,* 12 Pick.

Eastman *v.* Meredith.

227; *Com.* v. *Hoxey*, 16 Mass. 385; *Upjohn* v. *Taunton*, 6 Cush. 303; *Hadsell* v. *Hancock*, 3 Gray 530; Province Laws, 56 and 137; Elliott's Col. Hist. 175, 183; Broom's Maxims 366, 367; *Foljamb's Case*, 5 Co. 116; *Watson* v. *Farson*, 9 Howard 259.

Towns in this State are declared to be corporations by statute; and this is the case of a party who has suffered a private injury by the breach of the public corporate duty; and for such damage a municipal corporation, like a town or city, is liable like other corporations. *Mayor of Lyme Regis* v. *Henley*, 1 Bing. N. C. 222; S. C., 3 B. & Adol. 77; *Riddle* v. *Pro. of Locks, &c.*, 7 Mass. 187; *Troy* v. *Cheshire R. R.*, 3 Foster (23 N. H.) 83; *Townsend* v. *Turnpike*, 6 Johns. 91; *Thayer* v. *Boston*, 19 Pick. 511; *Anthony* v. *Adams*, 1 Met. 284; *Bailey* v. *Mayor, &c., of New-York*, 3 Hill 531; *Mayor, &c., of New-York* v. *Furze*, 3 Hill 612; *Martin* v. *Mayor, &c., of Brooklyn*, 1 Hill 545; *Mayor, &c., of New-York* v. *Bailey*, 2 Denio 433; *Lloyd* v. *Mayor, &c., of New-York*, 1 Selden 469; *Ross* v. *Madison*, 1 Carter (Ind.) 281; *Hutsen* v. *Mayor, &c., of New-York*, 5 Sanford 289; Angell & Ames on Corp. 386–391; *Pittsburg City* v. *Grier*, 22 Penn. 54; *Peck* v. *Ellsworth*, 36 Maine 393; *Wilson* v. *Mayor, &c., of New-York*, 1 Denio 595; *Meares* v. *Com. of Wilmington*, 9 N. C. 73; *Delmonico* v. *Mayor, &c., of New-York*, 1 Sandf. 222; *Cunliff* v. *Mayor, &c., of Albany*, 1. Barb. Sup. Ct. R. 190; *Conro* v. *Iron Co.*, 12 Barb. 27; *Yarborough* v. *Bank of England*, 16 East 6; *The Queen* v. *Birmingham R. W.*, 3 B. & Adol. 231; *Turnpike* v. *The People*, 15 Wendell 267; *Ward* v. *Turnpike*, 1 Spencer 323; *People* v. *Albany*, 11 Wendell 543; *Stetson* v. *Faxon*, 19 Pick. 157; *Boone* v. *Utica*, 2 Barb. 104; *Goodloe* v. *Cincinnati*, 4 Hammond 500; *Smith* v. *Same*, 4 Hammond 514; *Rochester Lead Co.* v. *Rochester*, 3 Comstock 463; *Stetson* v. *Kempton*, 13 Mass. 278; *Clark* v. *Washington*, 12 Wheaton 40; *Watson* v. *Lisbon Bridge*, 2 Shep. 204; *Canal Co.* v. *Parnaby*, 11 A. E. 223; *Taylor* v. *Crowland Gas and Coke Co.*, 29 L. Eq. R. 516; *Witham* v. *Hill*, 2 Wilson 92; *Ashby* v. *White*, 2 Lord

Raymond 955; Rand's Note to *Mower* v. *Leicester*, 9 Mass. 250; *Akron* v. *McComb*, 18 Ohio 229, and 15 Ohio 474; *Mayor, &c., of Memphis* v. *Lasser*, 9 Humphrey 557; *Rhodes* v. *Cleveland*, 10 Ohio 159.

The town, in this case, consented and assumed to exercise its corporate power of building a town-house for the holding of town-meetings, and this distinguishes the present case from *Russell* v. *The Men of Devon*, and other cases relied on by the defendants, in which it has been said that towns and counties are not liable to a civil action for a neglect or omission to perform a public duty. If the town had simply omitted to build or provide a house for holding the town-meetings, the reasoning of those cases might apply to this; but the plaintiff's action is founded on a misfeasance and not upon a nonfeasance, and this distinction is sustained by many authorities. 2 Burrill's Law Dictionary 720, 753; 1 Tidd's Practice 4; 3 Step. Commentaries 460; 1 Chitty's Practice 9; *Towle* v. *Alexandria*, 3 Peters 409; *Mayor, &c., of New-York* ·v. *Furze*, 3 Hill 612; *Martin* v. *Mayor, &c., of Brooklyn*, 1 Hill 550; *Turnpike* v. *Sears*, 7 Conn. 94.

The cases decided in Massachusetts and other States, and relied on by the defendants to show that towns are not liable to a civil action for neglect to perform a public duty, unless the action is given by statute, all owe their origin to *Russell* v. *The Men of Devon*; and that case was decided upon reasons which are not applicable to towns in New-Hampshire; and, therefore, those cases are of slight or no authority on the present question. Rand's Note to *Mower* v. *Leicester*, 9 Mass. 250; *Ball* v. *Winchester*, 32 N. H. 435.

*Stevens & Vaughan,* for the defendants, took the following grounds:

The town is a legislative corporation, established as part of the government for purely public purposes, and is not liable to the action of an individual for damages caused by the omission to perform a public duty, or by the partial or imperfect perform-

ance of the duty, unless the action is given by statute.  The distinction is wide between such corporations and those which are created for their own advantage.

The authorities, commencing with *Russell* v. *The Men of Devon*, 2 T. R. 667, are numerous and decisive, that at common law a private action can not be maintained against a *quasi* corporation for neglect to perform a mere public duty.  Several of the reasons, if not all, assigned by the court for the decision in *Russell* v. *The Men of Devon*, apply to towns in New-Hampshire.  Towns have no proper corporate fund for the satisfaction of a judgment; and if not otherwise satisfied, an execution against a town may be levied by the provisions of our statute on the property of any inhabitant.  *Harris* v. *Baker*, 4 M. & S., is to the same point as *Russell* v. *The Men of Devon*.

The doctrine of *Russell* v. *The Men of Devon* has been held applicable to towns in all the States of New-England, where the question has been raised.  *Riddle* v. *Pro. of Locks and Canals*, 7 Mass. 169; *Mower* v. *Leicester*, 9 Mass. 247; *Merchant's Bank* v. *Cook*, 4 Pick. 414; *Tisdale* v. *Norton*, 8 Met. 388; *Holman* v. *Townsend*, 13 Met. 297; *Chedsey* v. *Canton*, 17 Conn. 475; *Adams* v. *Wiscasset Bank*, 1 Greenl. 361; *Reed* v. *Belfast*, 20 Maine 246; *Baxter* v. *Winooski Turnpike*, 22 Vt. 114; *Hyde* v. *Jamaica*, 27 Vt. 443, 457; *Curtis* v. *Parker*, 1 N. H. 275; *Farnum* v. *Concord*, 2 N. H. 392; *Otis* v. *Strafford*, 10 N. H. 352; and towns in the different New-England States are alike in all respects that affect the present question.  *Towle* v. *The Common Council of Alexandria*, 3 Pet. 298, and *White* v. *The City Council of Charleston*, 2 Hill (S. C.) 571, are also strong authorities the same way.  It would be difficult to increase the weight of authority in favor of this position.  We have the concurring opinions of Lord *Kenyon*, Ch. J. *Parsons*, Ch. J. *Shaw*, Ch. J. *Mellen*, Ch. J. *Richardson*, Ch. J. *Marshall*, and the courts in which they presided, that a civil action can not be maintained against a *quasi* corporation for neglect of a public duty, unless the action is given by statute.

The fact that actions against towns to recover damages and

penalties for neglect of public duties are given by statute in certain cases, affords a strong argument that they are not liable to such actions except in the cases provided for by statute.

There is no conflict between the authorities on which we rely and those cited by the plaintiff. In *Bailey* v. *The Mayor, &c., of New-York,* the city had special powers conferred for their own benefit, and as to that matter were made a mere private corporation. *The Mayor of N. Y.* v. *Furze, Clark* v. *Washington,* and *Henley* v. *The Mayor, &c., of Lyme Regis,* are of the same character.

If any person or party is liable here for the injury sustained by the plaintiff, it is the selectmen and not the town. In issuing their warrant and fixing on the place for the meeting, they were not the agents of the town, but officers of the law, acting on their official responsibility. In discharging this duty they stand in the same relation to the town as surveyors of highways, and the rule of *respondeat superior* does not apply to the case. *Martin* v. *Mayor, &c., of Brooklyn,* 1 Hill 545.

PERLEY, C. J. The following may be taken for a general statement of the case set up by the plaintiff. The town of Meredith built a town-house, to be used for holding town-meetings and other public purposes. The house, by the default and negligence of those who built it in behalf of the town, was so improperly constructed that the flooring gave way at the annual town-meeting in 1855, and the plaintiff, an inhabitant and legal voter, in attendance on the meeting, received a serious bodily injury. The accident and injury were caused by the defects and insufficiency of the building.

Assuming that it was the duty of the town to provide a safe and suitable place for holding town-meetings, the question will remain, whether a citizen of the town, who suffers a private injury in the exercise of his public rights from neglect of the town to perform this public duty, can maintain an action against the town to recover damages for the injury?

Towns in this State are declared by statute to be corporations,

and consequently may sue and be sued in reference to all their legal rights and liabilities. But declaring them to be corporations can not confer upon them other powers or subject them to other duties than those which are conferred and imposed either by express provision of some statute, or are implied from the general character and design of such public corporations. *Hooper* v. *Emery*, 14 Maine 377.

We have no statute which gives an action against a town for an injury like that complained of in this suit; but the general position taken for the plaintiff is this: The town is a corporation; it was a public duty of the town to provide a safe and proper place for holding the annual town meetings; the plaintiff has suffered a private injury from neglect of the town to perform this public duty, and the law holds a corporation liable to an individual for any private damage that he may suffer from neglect of the corporation to perform a public duty.

In considering the authorities which have been relied on to sustain the general position of the plaintiff, it may be well to distinguish the different classes of corporations that have public duties to perform, and advert to the grounds upon which, in different cases, the legal liability for neglect to perform the public duty has been held to rest.

Private corporations, by the conditions, express or implied, upon which they hold their corporate powers, are frequently charged with the performance of public duties; and where a private corporation, like a turnpike, a canal, or a railroad, accepts a grant of corporate powers upon condition of performing a public duty, and an individual suffers a private damage from neglect of the corporation to perform the public duty, it is well settled, upon the authority of numerous cases, that he may maintain an action against the delinquent corporation, to recover his damages. A large proportion of the cases cited for the plaintiff are of this character.

So in England, where a public duty is imposed on a municipal corporation as a condition upon which the corporate franchises or corporate property have been granted; or where the corpo-

ration holds its franchises or property by a prescription from which a grant on like condition may be inferred, it has been held that any individual may maintain an action against the corporation to recover damages for an injury which he has suffered from neglect to perform the public duty.   In *Henley* v. *Lyme Regis*, 5 Bingham 91, *S. C. in Error*, 3 B. & Adol. 77, and 1 Bingham N. C. 222, the corporation held their franchise of a borough, and also a pier or quay, with the right to take tolls under a grant from the crown, in which they were directed to repair a sea wall ; and it was held that the plaintiff might maintain an action to recover damages which he had sustained by the neglect of the corporation to repair the wall.   In that case, 1 Bing. N. C. 222, it was said that where a matter of general and public concern is involved, " and the king, for the benefit of the public, has made a certain grant, imposing certain public duties, and that grant has been accepted, we are of opinion that the public may enforce the performance of those duties by indictment, and individuals peculiarly injured, by action."   In the *Mayor of Lyme in Error* v. *Turner*, Cowper 87, the corporation had immemorially repaired and cleansed a creek, and the plaintiff maintained his action against the corporation for damage caused by interruption of the navigation of the creek for want of cleansing and repairing. In that case it was said by Lord *Mansfield* that as the defendants were bound by the prescription to repair, " it might be the very condition and terms of their creation or charter."   In these cases the right to maintain the civil action appears to be placed on the ground that the municipal corporation accepted the grant of their franchises or their property from the crown upon the condition of performing the public duty, and were parties to a contract with the government in the same way as private corporations are, which accept the grant of corporate powers upon similar conditions.

It is also to be observed that municipal corporations in England are broadly distinguished in many important respects from towns in this and the other New-England States.   There is no uniformity in the powers and duties of English municipal corpo-

rations. They are not created and established under any general public law, but the powers and duties of each municipality depend on its own individual grant or prescription. Their corporate franchises are held of the crown by the tenure of performing the conditions upon which they have been granted, and are liable to forfeiture for breach of the conditions. They indeed answer certain public purposes, as private corporations do, which have public duties to perform, and some of them exercise political rights. But they are not, like towns, general political and territorial divisions of the country, with uniform powers and duties, defined and varied, from time to time, by general legislation. Towns do not hold their powers ordinarily under any grant from the government to the individual corporation; or by virtue of any contract with the government, or upon any condition, express or implied. They give no assent in their corporate capacity to the laws which impose their public duties or fix their territorial limits. In all that is material to the present inquiry, municipal corporations in England bear much less resemblance to towns in this country, than to private corporations which are charged with the performance of public duties, and for this reason the English authorities on the subject are but remotely applicable to the present case.

Grants are sometimes made to particular towns or cities, of special powers, not belonging to them under the general law; and there is a class of cases, in which towns and cities have been held liable to civil actions for damages caused by neglect to perform public duties growing out of the grant of such special powers: as the power to bring water by an aqueduct for public use by those who pay a compensation for it; to light the place with gas, on the same terms, or to make and maintain sewers at the expense of adjoining proprietors. Thus in *The Mayor, &c., of New-York in Error* v. *Furze*, 3 Hill 612, the city was empowered by a special act to lay down and maintain sewers, and charge the expense upon owners and occupants of houses and lots intended to be benefitted; and it was held that an individual might maintain an action against the city to recover

damages for a private injury which he had suffered from neglect of the city to keep the sewers in proper repair. The distinction between the liability of towns and cities for neglect to perform public duties growing out of the powers which they exercise under the general law, and their liability when the duty arises from the grant of some special power conferred on the particular town or city, is recognized or explained in *Bailey* v. *The Mayor, &c., of New-York*, 3 Hill 531.

The decision in *Lloyd* v. *The Mayor, &c., of New-York*, 1 Selden 374, is put upon this distinction, between a duty arising from the grant of a special power, and a duty implied from the exercise of political rights under the general law. "The corporation of the city of New-York," it is said in that case, "possess two kinds of powers, one governmental and public, and, to the extent *they* are held and exercised, is clothed with sovereignty; the other, private, and, to the extent *they* are held and exercised, is a legal individual. The former are given and used for public purposes; the latter, for private purposes; while in the exercise of the former the corporation is a municipal government, and while in the exercise of the latter, a legal individual." "The rules of law are clear and explicit which establish the rights, immunities and liabilities of the appellants, when in the exercise of each class of powers."

In some of the cases in which cities have been held liable to a civil action for neglect to perform public duties, growing out of grants conferring special powers and privileges, stress appears to have been laid on the circumstance that the city derived a direct pecuniary profit from the grant, in the shape of a toll or rent. But in other cases, where no benefit of that kind was derived from the grant, cities have been held liable, and the decision has been put on the ground that the grant of special powers, though not the source of any direct pecuniary profit, was yet in the nature of a special privilege or immunity, granted for the particular local advantage of the city, and placed the corporation on the same footing of liability as if the benefit were in the shape of a rent, or toll, or other pecuniary income; that the

grant was made and *accepted* on the same implied condition of performing the public duties growing out of it, as if it had afforded a direct profit in money.

In *Mears* v. *The Commissioners of Wilmington*, 9 Iredell 73, the corporation were sued for undermining a brick wall in grading a street, under authority conferred on the town by sundry special acts of the Legislature, and were held liable to the action. In that case the court say, " when the sovereign grants power to a municipal corporation to grade the streets, the grant is made for the public benefit, and is *accepted* because of the benefit which the corporation expects to receive, not by making money directly, but by making it more convenient for individuals composing the corporation or town to pass and repass in the transaction of business, and to benefit them by holding out greater inducements for others to frequent the town. The only distinction is that in one case the money is received directly, in the other indirectly. But in both cases the individuals composing the stockholders," (that is, in the private corporation,) " and the citizens of the town, derive special benefit from the work." *Cunliffe* v. *The Mayor, &c., of Albany*, 2 Barb. Sup. Ct. 190, would seem to fall into the same class of cases. There the city claimed authority under a special act to improve the navigation of Albany Basin, and to maintain a bridge ; and having altered the construction of the bridge under authority of the act, were decided to be liable to the plaintiff for an injury caused by the bridge while he was on it. So of *Rochester White Lead Co.* v. *The City of Rochester*, 3 Comstock 463, and *Clark* v. *Washington*, 12 Wheaton 40.

In such cases the special powers thus granted are not held by the particular town or city under the general law, and as one of the political divisions of the country. The public duty grows out of the special grant of power ; and, though held and exercised by a town or city, the nature of the power granted is the same as if a like power had been conferred on a private corporation created to answer the same public object, and the cases above referred to hold the town or city liable to a civil action for

neglect to perform a public duty arising from the grant of the special power in the same way, and, as I understand them, upon the same grounds and reasons, as private corporations are held, which are clothed with the same powers and bound to the performance of the same public duties. So far as I have had opportunity to examine this class of cases, they appear to go upon the ground that the special power, though no direct pecuniary profit may be derived from it, is granted as an immunity and peculiar privilege, for the benefit of the particular town or city, and is accepted, as in the case of a private corporation, upon the implied condition of performing the public duties imposed by it and growing out of it. *Henley* v. *Lyme Regis*, 1 Bing. N. C. 222 ; *Mears* v. *Wilmington*, 9 Iredell 73 ; *Mayor*, *&c.*, *of New-York* v. *Bailey*, 2 Denio 456.

This distinction between corporations that voluntarily accept the grant of special powers from the government, and the inhabitants of any district who are by statute invested with particular powers without their consent, is stated and relied on by *Parsons*, C. J., in the early case of *Riddle* v. *Locks and Canals*, 7 Mass. 187, and is recognized in *Sears* v. *The Turnpike*, 7 Ct. 9.

The case of *Pittsburg City in Error* v. *Grier*, 22 Penn. 54, cited for the plaintiff, stands upon grounds which clearly distinguish it from the present. The city, in that case, was in possession of a public wharf, exercising an exclusive supervision over it, and receiving tolls for its use ; and the plaintiff sustained a special injury from the neglect of the city to keep the wharf in order. *Black*, C. J., delivering the opinion of the court, says, " The rule undoubtedly is, that those who have a public work under their control are bound to repair it, and the force of this obligation is still further increased when it yields its possessors a revenue. The cases above cited show that this principle applies to public ports in possession of a city, as well as canals, bridges and other highways in the hands of individuals and private corporations." " The injury is a violation of the duty which arises out of the control which the city has over the port, and her receipt of tolls from the vessels which come into it."

The case is thus put distinctly on the ground that the public duty which was the foundation of the action arose out of the control which the city exercised over the wharf and the income received for the use of it.

In several of the cases cited for the plaintiff, cities and towns have been held liable for private injuries done by them in the course of executing works which they were by law authorized to perform. In *Scott* v. *The Mayor and Aldermen of Manchester*, 37 Law & Eq. 495, by the carelessness of workmen whom the defendants employed in laying gas-pipes, a piece of metal was thrown into the plaintiff's eye, and the city was held to be liable. So in *Delmonico* v. *The Mayor, &c., of New-York*, 1 Sanford 222, an action was maintained for damage suffered by the plaintiff from the negligence of the defendants in the process of constructing a sewer. The remarks of the court in *Anthony* v. *Adams*, 1 Met. 285, are to the point, that an action may be maintained against a town in such a case. The plaintiff, in cases of this character, does not recover on the ground that he has been denied any public right which the corporation owed to him as a citizen of the town, or because he has suffered an injury in the exercise of a public right, from neglect of the town to perform a public duty. The corporation being authorized by law to execute the work, if, in their manner of doing it, they cause a private injury, they are answerable in the same way and on the same principle as an individual who injures another by the wrongful manner in which he performs an act lawful in itself. It has been sometimes made a question, whether in the particular case the corporation were liable as principals for the conduct of those who performed the work on their account; but where a work is once conceded to be done by the corporation, it would seem to be clear, on authority and general principles, that a corporation, public or private, must be held liable like an individual for injuries caused by negligence in the process of executing the work.

Then, again, towns and other municipal corporations, including counties in this State, have power, for certain purposes, to hold

and manage property, real and personal; and for private injuries, caused by the improper management of their property, as such, they have been held to the general liability of private corporations and natural persons that own and manage the same kind of property. *Bailey* v. *The Mayor, &c., of New-York*, 3 Hill 541. So far as they are the owners and managers of property, there would seem to be no sound reason for exempting them from the general maxim which requires an individual so to use his own that he shall not injure that which belongs to another. So if a town or city maintain an erection or structure which is a private nuisance, and causes a special damage, or, in the performance of an authorized act, invade any right of property, the corporation has been held liable to a civil action. *Thayer* v. *Boston*, 19 Pick. 511; *Akron* v. *McComb*, 18 Ohio 229; *Rhodes* v. *Cleveland*, 10 Ohio 159. If the defendants in the present case had laid and maintained the foundations of their town-house across a stream, and caused the water to flow back on the plaintiff's land, according to these authorities they would have been liable to an action for the damage.

The case of the plaintiff can not be classed with any of those to which we have adverted. The question here is, whether a town is liable to the action of a citizen of the town who has suffered a special damage from neglect of the town to provide a safe place for holding the annual town-meeting. The public duty relied on is not enjoined by express provision of any statute. If such a duty exists, it is implied from the general character and design of such *quasi* corporations, and must depend on the general law applicable to all towns. Here is no contract, express or implied, between the State and the individual town, and no grant of any special power or privilege which can be supposed to have been voluntarily accepted by the town upon condition of performing the public duty. Towns are involuntary territorial and political divisions of the State, like counties, established for purposes of government and municipal regulation. It is chiefly through this organization of towns that the people exercise the sovereign power of government; and the plaintiff's

claim is for damages which he has suffered from neglect of the town to provide him a safe place for the exercise of his public and political rights as a citizen of the town and State. Among the numerous authorities which the laudable industry of the plaintiff's counsel has brought to our notice, I have not found one which goes the length of holding that an action can be maintained in a case like this. The cases cited that come nearest the present are perhaps those in which it has been held that a town or city is liable for a private damage caused by neglect to perform a public duty growing out of the grant of some special power. But those cases cannot be regarded as authorities in point, because they appear to have been decided upon a distinction between the exercise of such special powers, and the exercise of the general powers which belong to all towns as mere public and political divisions of the country, and upon the ground that the special powers thus granted to the individual town or city were in the nature of privileges accepted upon the implied condition of performing the public duties growing out of them. On the other hand, there is a great weight of authority to show that towns in New-England are not liable to a civil action in a case like this.

In *Riddle* v. *The Locks and Canals*, 7 Mass. 169, 187, the case of *Russell* v. *The Men of Devon*, 2 T. R. 667, is cited as an authority applicable to towns and counties in Massachusetts; and in *Mower* v. *Leicester*, 9 Mass. 250, it was held that towns are not liable to a civil action for neglect to perform public duties imposed on them, unless the action were given by some statute, and *Russell* v. *The Men of Devon* was again recognized as applicable to the case of towns. *The Merchants' Bank* v. *Cook*, 4 Pick. 114; *Tisdale* v. *Norton*, 8 Met. 292; *Holman* v. *Townsend*, 13 Met. 300, and *Brady* v. *Lowell*, 3 Cushing 124, are to the same point.

In *Adams* v. *Wiscasset Bank*, 1 Greenl. 361, *Mellen*, C. J., cites from *Riddle* v. *The Locks and Canals* the remarks of C. J. *Parsons* on this subject, and adds, " No private action, unless given by statute, lies against *quasi* corporations for breach of a

corporate duty." And other cases in Maine would seem to show that the rule as above stated is well established in that State. *Hooper* v. *Emery*, 14 Maine 377 ; *Reed* v. *Belfast*, 20 Maine 248 ; *Sanford* v. *Augusta*, 32 Maine 536.

We understand the same rule to prevail in Vermont. In *Baxter* v. *The Winooski Turnpike*, 22 Vt. 123, *Bennet*, J., in delivering the opinion of the court, says, " I take it to be well settled that if the statute had not given the action, no individual who had sustained a special damage through neglect of the town to repair their roads, could maintain a suit. It may be said that where an individual sustains an injury by the neglect or default of another, the law gives a remedy ; but that principle does not apply where the public are concerned." And the same general doctrine is affirmed in *Hyde* v. *Jamaica*, 27 Vt. 443.

In Connecticut it is held that no action will lie for injuries caused by defects in a highway, unless given by statute. *Chedsey* v. *Canton*, 17 Conn. 475.

In *Farnum* v. *Concord*, 2 N. H. 392, *Richardson*, C. J., says, " No action lies at common law against towns for damages sustained through defects in highways." He cites, as authorities for his position, *Mower* v. *Leicester*, and *Russell* v. *The Men of Devon*, and, after quoting the provision of our statute which gives an action for special damages caused by insufficiency of highways, he adds, " And the question is, whether any damage has happened to the plaintiff in this case by means of the insufficiency or want of repairs of the highway in question, within the intent and meaning of this statute." The right to recover against the town is thus placed entirely on the statute.

It is said in argument that the authority of these New-England cases is much weakened by the circumstance that they may all be referred for their origin to *Russell* v. *The Men of Devon*, and that the reasons assigned for the decision in that case are not applicable to our towns. There is certainly no such exact resemblance between counties in England and our towns, as will make all the reasons upon which the court in that case placed their decision applicable to towns in this State. Counties

in England are, however, territorial and political divisions of the country, as counties and towns are here ; they are *quasi* corporations, so far as to be liable to public prosecution for neglect to perform their public duties ; and the reason that the county had no corporate fund out of which the plaintiff's judgment could be paid, would seem to be as strong against maintaining an indictment as a civil action ; for it is not easy to see how the want of a corporate fund would make it more difficult to collect a judgment recovered by an individual, than to levy a fine assessed after conviction on an indictment. That is indeed admitted in the judgment of the court, and the liability of a county to indictment put on the ground of authority and unbroken usage. And the doctrine of that case has been adopted and applied to towns in numerous instances, by judges who must certainly be reckoned among the most eminent jurists that New-England has produced : by *Parsons* and *Shaw* in Massachusetts, by *Mellen* and *Shepley* in Maine, and by our own learned and excellent Chief Justice *Richardson*, in this State ; names which carry with them an irresistible weight of authority on all legal questions, and especially on one like the present ; for no men in the country have been more familiarly acquainted with the whole legal history of towns in New-England, and all the traditions of the law in relation to them.

A manuscript case of *Wheeler* v. *Troy* has been shown to us, in which it is understood to have been decided, in December, 1848, at the term of the Superior Court for Cheshire county, that towns in this State are liable to an action for damages caused by defect of highways, independent of the statute which gives the action. Taking that case to be correctly reported and to have been correctly decided, it is far from coming up to the present. The duty to repair highways is especially enjoined upon towns by statute, for the common benefit of all who have occasion to use them. It is not a public duty, supposed to be devolved upon towns to enable their own citizens to exercise and enjoy their public and political rights, like that on which the plaintiff relies in this case.

We find, however, upon inquiry, that this case of *Wheeler* v. *Troy* was decided by two only of the three judges then on the bench, in the absence of Mr. Justice *Woods,* whose opinion on a question of this kind would have added great weight to the authority of the case ; and we have no information that he then concurred or now concurs in the decision. The case has remained long without any published report, and has received no confirmation from recognition in any subsequent decision, or from the aquiescence of the legal profession ; and, indeed, the manuscript report of the case fails to afford evidence that it was decided after so careful and thorough a consideration as was usual with that court ; and, if an occasion should hereafter arise to require it, we should feel quite at liberty to reverse the decision ; but we do not find ourselves called on to do it at this time.

A distinction has been suggested in argument, between an omission or total neglect to perform a public duty, and negligence in the manner of performing it. It has been contended that though the town might not be liable for damages caused by omission to perform the duty, they would be for an injury caused by the negligent and improper manner of performing it. There are doubtless cases where a party who is under no legal obligation to perform an act or service, is yet liable for damages caused by his negligence, if he voluntarily enters upon the performance of it. But our discussion of this case has gone on the assumption that it was the duty of the town to provide a safe and suitable place for holding the town-meeting ; and we are unable to perceive any distinction in principle between a claim to recover damages for a total neglect to perform an admitted public duty, and for neglect to perform it properly and with due care, when the injury complained of happens to the plaintiff in the exercise of his public rights as a citizen of the town. The duty is not performed unless it is properly performed. In both cases the town has neglected to perform, or failed to perform, the public duty which they owed to the plaintiff and other citizens.

We see no reason to question the authority of towns to build and own town-houses, to be used for holding town-meetings and

Eastman *v.* Meredith.

other public purposes.   But it by no means follows as a necessary consequence that it is the duty of towns to provide houses of their own for such purposes.   And. even where the town is provided with a town-house, we are not required, in the view which we take of this case, to say whether the duty to see that the house is in proper order for public use rests on the town in a corporate capacity, or on the officers of the town.   There is no statute that requires town meetings to be held at the town-house, even in cases where the town owns such a building.   On the contrary, the warrant of the selectmen notifying the meeting is by the statute " to prescribe the place."   If the town-house were known at the time to be in an unsafe condition, it would hardly be contended that their duty would require the selectmen to notify the meeting to be held there.   It may perhaps be found, when the question shall be considered, that it belongs to the town officers, and not to the town in a corporate capacity, to see that the town meetings are held in a safe and suitable place.

We regard the present case as one of new impression.   We have heard of no earlier attempt in this State to maintain an action against a town, for a private injury suffered by a citizen of the town from neglect of the town to provide him with safe and suitable means of exercising his public rights, and we are not informed of any case in which such an action has been maintained in any other State.   We believe it to have been the general understanding of the profession in this State, that an action will not lie against a town for neglect to perform a mere public duty, unless the action is given by statute.   The authorities cited in support of the plaintiff's action are very distinguishable, as we think, from the present case, and there is a great weight of authority on the other side.

Our conclusion is, that this action, on the case stated to us, cannot be maintained.