ROWE *v.* PORTSMOUTH. { Mar. 20, 1876.

*Damage from stoppage of common sewers—Degree of care—Notice.*

56 291
66 544
56 107
70 107
70 110
70 111
56 291
171 372
71 376
56 291
e72 153
72 154
72 233

A city, having power by statute to construct public sewers, and to demand and receive pay from adjoining owners for liberty to enter their private drains into such sewers, is responsible for negligently suffering them to occasion a nuisance to the estates of such adjoining owners, if the nuisance does not result from the original plan of construction, and could be avoided by keeping them in proper condition.

In maintaining such public sewer, a city is bound to use that degree of care and prudence which a discreet and cautious individual would use if the whole loss or risk was to be his alone.

A city will not be liable for injuries caused to individuals, by an obstruction in such public sewer not placed there by its own officials or by authority of the city government, until after actual notice of such obstruction, or until, by reason of the lapse of time, actual notice may be presumed.

FROM ROCKINGHAM CIRCUIT COURT.

CASE, to recover damages sustained from a flow of water into the cellar of the plaintiff's house from the defendants' common sewer. Plea, the general issue. The case was referred to a referee, under the statute, who reports the following facts as proved: Prior to the month of July, 1872, the defendants for more than twenty years had a common sewer leading from High street down through Hanover street by the plaintiff's dwelling-house, and emptying into the North Mill Pond, and the plaintiff's cellar was drained by a private drain leading into the defendants' common sewer of right. In 1867 a new tile drain was laid by the plaintiff in place of her old one of wood, which was discontinued, and said new tile drain led into the defendants' sewer. In 1867 the defendants built a new common sewer in place of their old one, which was discontinued, of cement stone pipe one foot in diameter, laying the same outside of the old sewer, nearer to the plaintiff's dwelling-house, and, in consequence, cut off all the private drains leading into the old sewer, and connected them with the new sewer, including the plaintiff's drain; that the defendants, in laying said new sewer a short distance below the place where the plaintiff's drain entered it, found a water-pipe, one inch in diameter, running across the proposed course of their sewer at right angles, and they cut their sewer-pipe so as to let it down over said water-pipe, so that said water-pipe passed through the centre of said sewer-pipe. It is provided by ordinance of said city " that the city councils shall have power to construct drains and common sewers through highways, streets," &c., " and may re-

quire all persons to pay a reasonable sum for the right to open any drain into any public drain or common sewer."

In the month of July, 1872, by reason of a lady's parasol or sunshade floating down said sewer and catching on said water-pipe, said sewer became obstructed and choked up, so that on July 4, after a shower, the water flowed back from said obstruction through the plaintiff's drain into her cellar, causing her damage and annoyance; and so, likewise, at three different times thereafter during the month of July, at the last of which times, by reason of there being a very heavy shower, and by reason of the said defendants' common sewer having become more choked and obstructed at said water-pipe, the plaintiff's cellar was nearly filled with mud and water, her provisions and produce destroyed, and the cellar and house damaged. The plaintiff each time notified the city marshal, who lived in her neighborhood; but it did not appear in evidence whether or not the marshal notified any other city officer until the last time, when he notified the mayor and one of the aldermen, and thereupon the defendants proceeded to examine their said sewer, and found and removed the obstruction aforesaid. Said obstruction would not have happened had said water-pipe not been allowed to run through the defendants' said sewer; but said sewer, as constructed, was sufficient for the purpose off carrying off the water had said obstruction not occurred as above stated. There was no evidence to show in what manner said parasol or sunshade entered said sewer. Upon the foregoing facts the referee found that the defendants were guilty in manner and form as the plaintiff had declared against them, and assessed damages in the sum of $253.80.

Upon the return of said report the plaintiff moved for judgment thereon in her favor for the amount found by the referee, and the court *pro forma* granted the motion, to which the defendants excepted.

The questions arising on the foregoing statement of facts and ruling of the court were transferred to this court by STANLEY, J.

*Frink*, for the plaintiff.

*Hodgdon*, for the defendants.

SMITH, J. The defendants raise three questions upon the report of the referee: (1) That no action will lie against a city for neglect to build or repair a sewer; (2) that if such action will lie, a city is answerable only for neglect to use ordinary vigilance and care to keep its sewers open and free from obstruction; and (3) that the defendants did not receive seasonable notice of the obstruction to prevent the injuries which the plaintiff has received.

By ch. 44, sec. 9, Gen. Stats., it is provided that " city councils shall have power to construct drains and common sewers through highways, streets, or private lands, paying the owners such damages as they shall sustain thereby, said damages to be assessed by the mayor and aldermen in the same manner and with the same right of appeal from their

decision as in case of the laying out of highways ; and may require all persons to pay a reasonable sum for the right to open any drain into any public drain or common sewer." This section is an exact reënactment of section 21 of the act to establish the city of Portsmouth, approved July 6, 1849, under the authority of which the defendants must have rebuilt their sewer in Hanover street in the year 1867, the General Statutes not taking effect till January 1, 1868. The statute authorized and empowered the defendants to construct public sewers, but did not impose that duty upon them. It was optional with the defendants whether they would or would not take the benefit thus conferred upon them. This authority the defendants accepted when they accepted their charter in 1848, under the provisions of section 28 ; and it needs no argument to show that a city which constructs sewers under the authority of a statute, virtually accepts the power therein conferred, and will not be admitted to allege the contrary. This case, therefore, is not to be distinguished from *Child* v. *Boston*, 4 Allen 41, upon the question of acceptance by the defendants of the statute conferring the authority to construct sewers. When, then, the defendants made their election by accepting the act of 1849, and by executing the powers therein granted, and also granted by the General Statutes, and received pay from the plaintiff for opening her drain into their public sewer, the question arises whether they are liable to her for injuries sustained by her by reason of their neglect to keep their sewers in proper repair.

Under what circumstances a municipal corporation will be held liable to an individual suffering injuries from the neglect of such corporation to perform a public duty, was very fully discussed by PERLEY, C. J., in *Eastman* v. *Meredith*, 36 N. H. 284. In that case it was decided that though a town-house, which was erected by the town, was so defectively constructed that when a town-meeting was held in it the floor broke down and a voter was thereby injured, yet he could not maintain an action against the town to recover damages for the injury. But the learned chief justice remarks,—"Grants are sometimes made to particular towns or cities of special powers not belonging to them under the general law : and there is a class of cases in which towns and cities have been held liable to civil actions for damages caused by neglect to perform public duties growing out of the grant of such special powers,— as the power to bring water by an aqueduct for public use by those who pay a compensation for it, to light the place with gas on the same terms, or to make and maintain sewers at the expense of adjoining proprietors. Thus, in *The Mayor, &c., of New York in error* v. *Furze*, 3 Hill 612, the city was empowered by special act to lay down and maintain sewers, and charge the expense upon owners and occupiers of houses and lots intended to be benefited ; and it was held that an individual might maintain an action against the city to recover damages for a private injury which he had suffered from neglect of the city to keep the sewers in proper repair. The distinction between the liability of towns and cities for neglect to perform public duties growing

out of the powers which they exercise under the general law, and their liability when the duty arises from the grant of some special power conferred on the particular town or city, is recognized or explained in *Bailey* v. *Mayor, &c., of New York*, 3 Hill 531."

Judge PERLEY further says, page 293,—"In such cases the special powers thus granted are not held by the particular town or city under the general law, and as one of the political divisions of the country. The public duty grows out of the special grant of power, and though held and exercised by a town or city, the nature of the power granted is the same as if a like power had been conferred on a private corporation created to answer the same public object; and the cases above referred to hold the town or city liable to a civil action for neglect to perform a public duty arising from the grant of the special power in the same way, and, as I understand them, upon the same grounds and reasons as private corporations are held, which are clothed with the same powers and bound to the performance of the same public duties. So far as I have had opportunity to examine this class of cases, they appear to go upon the ground that the special power, though no direct pecuniary profit may be derived from it, is granted as an immunity and peculiar privilege for the benefit of the particular town or city, and is accepted, as in the case of a private corporation, upon the implied condition of performing the public duties imposed by and growing out of it. *Henley* v. *Lyme Regis*, 1 Bing. N. C. 222; *Mears* v. *Wilmington*, 9 Ired. 73; *Mayor, &c., of New York* v. *Bailey*, 2 Den. 456."

It is well settled that a private action cannot be maintained against a town, or other *quasi* corporation, for a neglect of corporate duty, unless such action be given by statute. *Riddle* v. *Proprietors of Locks & Canals*, 7 Mass. 187; *Mower* v. *Leicester*, 9 Mass. 247. "This rule of law, however, is of limited application. It is applied, in case of towns, only to the neglect or omission of a town to perform those duties which are imposed on all towns without their corporate assent, and exclusively for public purposes, and not to the neglect of those obligations which a town incurs when a special duty is imposed on it with its consent, express or implied, or a special authority is conferred on it at its request. In the latter cases, a town is subject to the same liabilities for the neglect of those special duties to which private corporations would be if the same duties were imposed or the same authority were conferred on them, including their liability for the wrongful neglect as well as the wrongful acts of their officers and agents." *Bigelow* v. *Randolph,* 14 Gray 541.

*Child* v. *Boston*, 4 Allen 41, is a case much in point, where it was held that sewers when constructed become the property of the city, and the duty of keeping them in repair devolves on the city; and the city is responsible for negligently suffering them to occasion a nuisance to the estates of the citizens whose private drains enter into them, if the nuisance does not result from their original plan of construction, and could be avoided by keeping them in proper condition. The plaintiff's drain entered the defendants' common sewer, which had its out-

let in the south bay at the depth of some feet below high water. By means of a waste weir, the sewer was constructed to discharge into the empty basin in the back bay when the outlet into the south bay was closed by the tide, and the water in the sewer had risen high enough to reach the waste weir. The proprietors filled in against the sewer in the back bay, thereby preventing the discharge through the waste weir, and the plaintiff's premises were flowed in consequence. HOAR, J., remarked,—" Here a special authority was conferred and accepted, involving important relations to individual proprietors of land, and entire control of an easement of such a nature that negligence might not only deprive those interested of a benefit which it was designed to afford, and for which they had paid, but produce consequences actively and directly pernicious. The duty to keep the sewer free from obstructions was a ministerial duty, and the defendants were liable for negligence in its exercise to any person to whom their negligence occasioned an injury."

Judge Cooley, in his work on Constitutional Limitations, page 248, says,—" The grant by the state to the municipality of a portion of its sovereign powers, and their acceptance for these beneficial purposes, is regarded as raising an implied promise on the part of the corporation to perform the corporate duties; and this implied contract, made with the sovereign power, enures to the benefit of every individual interested in its performance. In this respect these corporations are looked upon as occupying the same position as private corporations, which, having accepted a valuable franchise on condition of the performance of certain public duties, are held to contract, by the acceptance, for the performance of those duties." The authorities are very unanimous in support of this doctrine, and are cited on page 248 of Mr. Cooley's work.

As to the second and third questions raised by the defendants, the rule in such cases is stated in *Rochester White Lead Co.* v. *Rochester*, 3 N. Y. 463, to be, that " a city is bound to exercise that care and prudence which a discreet and cautious individual would or ought to use if the whole loss or risk were to be his alone." In *Hume* v. *The Mayor, &c., of New York*, 47 N. Y. 639, it is said,—" The city authorities are not bound to be experts, or skilled in mechanics and architecture, and can only be held to the extent of reasonable intelligence and ordinary care and prudence." *Rockwood* v. *Wilson*, 11 Cush. 221. In *Johnson* v. *Haverhill*, 35 N. H. 74, which was an action against the town for an injury resulting from an alleged defect in a highway, it was held that the question of negligence on the part of the town does not arise except incidentally, as it is involved in the question whether the defect exists, and this latter question may depend upon the manner in which the defect originated, and the circumstances of its continuance. In such case the question of negligence is a material inquiry. And where an obstruction exists by reason of inevitable accident, without fault or negligence on the part of any person, it is not an obstruction within the meaning of the statute unless the town had notice of it,

express or implied, and reasonable opportunity, by the exercise of proper care and vigilance, to have removed it before the accident occurred. It is well settled, that a municipal corporation is not liable for injuries caused to individuals by obstructions on the highway not placed there by its own officials or by authority of the city government, until after actual notice of their existence, or until, by reason of the lapse of time, it should have had knowledge, and therefore actual notice may be presumed. *Hume* v. *New York, supra,* 646; *Colley* v. *Westbrook,* 57 Me. 181; *Hunt* v. *Brooklyn,* 35 Barb. 226; Cooley, page 249.

The case does not show that the referee did not apply these rules in weighing the evidence laid before him, and in coming to the conclusion which he reached. We cannot say, as matter of law, from the facts presented by the report, that the defendants did not act with the care and prudence that a discreet and cautious individual would if the whole loss or risk were to be borne by him alone. There is evidence tending to show that the thing which caused the obstruction in the sewer had been there for such a length of time that notice to the defendants must be presumed. But these were questions of fact, to be found by the referee according to the particular circumstances of this case—*Johnson* v. *Haverhill, supra;* and it is to be presumed, in the absence of any evidence to the contrary, that he applied the law correctly to the facts.

CUSHING, C. J. The case of *Eastman* v. *Meredith* was very elaborately and carefully considered by the late Chief Justice PERLEY. From that case, and the authorities cited by my brother SMITH, it seems to me well established that this is one of that class of cases in which a corporation would be liable at common law for a neglect of its duty.

Some question has been made in the argument about the sufficiency of the notice to the city of the defect in the sewer, and it is claimed that the city marshal was not the proper officer to receive the notice. In the case of *Howe* v. *Plainfield,* 41 N. H. 135, which was an action for damages occasioned by a defect in a highway, the defendants offered to show that the selectmen had no notice of the defect. The testimony was excluded, and it was held to have been rightly excluded,— the court putting the matter upon the ground that, if the defect had existed for a sufficient length of time to give reasonable opportunity to ascertain and repair it, the town was liable, whether the selectmen had notice, express or implied, of its existence or not. The true theory of the law seems to be, that, in matters of this kind, every corporator ought to interest himself in taking notice of defects and bringing them to the knowledge of the authorities, and that whenever the jury is in condition to say that the corporation ought to have taken notice, it will be held liable. I think we must infer that the referee found, from the notice to the city marshal, which tended to give notoriety, from the length of time which had elapsed, and from all the circumstances, that the defendants had been guilty of neglect. I think, therefore, there should be judgment for the plaintiff on the report.

Ladd, J. I, also, think there should be judgment on the report for the plaintiff. Certain facts were reported by the referee, for what purpose does not very clearly appear, and judgment was rendered by the court below for the plaintiff in accordance with the general finding of the referee. The defendants excepted to the order for judgment against them. I understand the ground they take to be, first, that there was no evidence from which the referee could legally find that the damage was caused by any want of reasonable and ordinary care on the part of the city with respect to the sewer ; and, second, that if there was such evidence, still they are not liable, according to the doctrine of *Eastman* v. *Meredith*, 36 N. H. 284.

The first position is certainly without foundation. It is entirely clear that there was evidence from which the referee might well find fault and negligence in the original construction of the sewer, and negligence in not removing the obstruction before the injury happened.

The second point is undoubtedly one of more intrinsic difficulty. The defendants were not bound by law to construct the sewer, and herein the case differs entirely from that of an injury caused by a defect in a highway. They were, however, authorized to construct it, and voluntarily undertook that service. The plaintiff's cellar was drained into the sewer " of right," as the case finds ; so there is no pretence that her legal rights had been forfeited or impaired by her own act. It does not appear whether this right to drain her cellar into the common sewer was of such a character that she could compel the defendants to keep up the sewer for that purpose, nor whether the right was obtained by the payment of a reasonable sum to the city, as provided by Gen. Stats., ch. 44, sec. 9 ; but, in the view I take of the case, neither of these things is material. It is material that she did not, without right, open her drain into the sewer.

As to the application of *Eastman* v. *Meredith*, it appears to me the cases are not parallel. There it was held, that, where a building, erected by a town for a town-house, was so imperfectly constructed that the flooring gave way at the annual town-meeting, and an inhabitant and legal voter, in attendance on the meeting, received thereby a bodily injury, he could not maintain an action against the town to recover damages for the injury.

The decision was placed entirely on the peculiar nature of the obligation of a town to provide a safe place in which to hold town-meetings. That duty is not imposed by statute, nor by contract. It is not an enterprise undertaken by the town for gain. It is at most a public or political duty, and the right of the citizen that it shall be properly performed is a public or political right.

The court say,—" We regard the present case as one of new impression. We have heard of no earlier attempt in this state to maintain an action against a town for a private injury suffered by a citizen of the town from neglect of the town to provide him with safe and suitable means of exercising his public rights, and we are not informed of any case in which such an action has been maintained in any other state."

Nearly the whole of the elaborate opinion of the court is occupied with showing the distinctions between that case, and cases bearing a very strong resemblance to the present.

The question, whether municipal corporations in this country, and corporations in England having some of the powers and charged with some of the duties usually exercised by municipal corporations here, are liable for negligence, carelessness, or misfeasance, both in the performance of their legal duties and the doing of voluntary acts within the scope of their authority, has been much considered by the courts on both sides the Atlantic; and the decided weight of modern authority is, that in this respect they stand like private individuals or corporations. The English cases on this subject are very thoroughly and carefully reviewed by BLACKBURN, J., in *Mersey Docks Trustees* v. *Gibbs*, L. R., 1 H. L. 93. That was an action against the Mersey Docks Board of Trustees, a corporation created by act of parliament, with power to build docks at Liverpool and secure dock rates, which rates they were bound by the statute to apply wholly to the maintenance of the docks and the payment of a very large debt contracted in making them. The plaintiff's vessel, while entering one of the docks, ran upon a bank of mud which had been suffered to accumulate at the entrance of the dock, and was damaged. It was held that the principle on which a private person, or a company, is liable for damages occasioned by the neglect of servants, applies to a corporation which has been entrusted by statute to perform certain works, and to receive tolls for the use of those works, although those tolls, unlike the tolls received by the private person or the company, are not applicable to the use of the individual corporators, or to that of the corporation, but are devoted to the maintenance of the works, and, in case of any surplus existing, the tolls themselves are to be proportionately diminished. This case, decided in 1866, shows most clearly the state of the law in England on this point at the present time, and is very much in point.

There was evidence here from which the referee might find want of due care in the construction of the sewer, and that the damage happened by reason thereof.

In *The Mayor, &c., of New York* v. *Bailey*, 2 Den. 433, it was held that a municipal corporation is responsible for the negligence or unskilfulness of its agents and servants, when employed in the construction of a work for the benefit of the city or town, subject to the government of such corporation. The action was for injury occasioned by the negligent and unskilful construction of a dam on the Croton river, being part of the public works built pursuant to a statute for supplying the city with pure and wholesome water.

In *The Rochester White Lead Co.* v. *Rochester*, 3 N. Y. 463, the corporation of the city of Rochester, having power to cause common sewers, drains, &c., to be made in any part of the city, directed a culvert to be built, for the purpose of conducting the water of a natural stream which had previously been the outlet through which the surface water of a portion of the city had been carried off. A freshet having

occurred, the culvert, in consequence of its want of capacity and the unskilfulness of its construction, failed to discharge the waters, so that they were set back upon the factory of the plaintiffs, and injured their property situated therein. Held, that the city corporation was liable for the damages. And the doctrine was laid down, that an ordinance of a city corporation, directing the construction of a work within the general scope of its powers, is a judicial act for which the corporation is not responsible ; but the prosecution of the work is ministerial in its character, and the corporation must therefore see that it is done in a safe and skilful manner.

There was also, in the present case, as already suggested, evidence from which the referee might find negligence in not removing the obstruction from the sewer before the injury occurred ; and my opinion is, that this also furnishes legal ground upon which the award of the referee should be sustained.

The case of *The Mayor, &c., of New York* v. *Furze*, 3 Hill 612, is in point. It was there held that the corporation of the city of New York are bound to repair the sewers, &c., constructed by them ; and, if an inhabitant be injured by reason of their neglect in this particular, he may maintain an action against them for his damages.

Another strong case of the same description is *Child* v. *Boston*, 4 Allen 41, where the city was held responsible for negligently suffering the common sewers to occasion a nuisance in the estates of the citizens whose private drains enter into them.

A large number of cases bearing in the same direction may be found in Shearman & Redfield on Negligence, secs. 120, 144, 151, 579.

The point as to want of due care and skill in the original construction was decided by this court in the recent case of *Gilman* v. *Laconia*, 55 N. H. 130.

I think the defendants were bound to the exercise of ordinary care and skill, both in constructing and maintaining the sewer, and that, for any injury which happens to the estate of a citizen from a failure in that respect, they are responsible.

*Judgment on the report for the plaintiff.*