JOHN K. FOY, and others, In Equity,

*vs.*

GARDINER WATER DISTRICT, and others.

Kennebec.    Opinion August 26, 1903.

*Election. Voters*, Majority vote. *Gardiner Water District. Statutes*, Explanatory act
and time of taking effect. *Municipal Corporations.*
*Special Laws, 1903, c. 82, c. 194.*

The legislature by a special act of Feby. 26, 1903, provided that it should
take effect when approved by a majority vote of the legal voters within
the district, and by an explanatory act of March 18, 1903, declared that
the former act should take effect if approved by a majority vote of the
legal voters voting at the election held under the first act.

*Held;* that both acts became law at the date of their approval.

*Also;* that the act of March 18th, is a legislative declaration of what was
meant in the original act by the term "majority vote of the legal voters,"
and defines it as "a majority vote of the legal voters voting" although
the meeting of the inhabitants under the first act had been called on
March 10th.

*Semble;* under the first act that if the explanatory act had not been passed,
the better construction of the term "majority vote of the legal voters" is
a majority of those actually voting.

It is a fair presumption that those not voting assent in advance to the action
of those who do.

Appeal in equity.    Decree below confirmed.    Petition in equity
by ten tax payers of the City of Gardiner asking an injunction
against the Gardiner Water District, incorporated by an act approved
Feby. 26, 1903, for the purpose of supplying that city and the towns
of Randolph, Pittston and Farmingdale with pure water for domestic
and municipal purposes.

The corporation was also empowered to acquire the property of the
Maine Water Company, within the limits of the City of Gardiner and
the towns named, by purchase or exercise of the right of eminent
domain.    By the terms of the act it was not to take effect until
approved by a majority of the legal voters within said district.    On
March 10th, 1903, a special meeting of the voters was called to be

held on March 23d and the legislature by an act approved March 18th passed an explanatory act which provided that the act of Feby. 26, 1903, should take effect when approved by a majority vote of the legal voters voting at the election held under the provisions of the first act.

At the meeting held on March 23, 1903, there were 271 ballots given in the affirmative and 233 in the negative.

The petitioners claimed the number of voters in the district authorized to vote on the acceptance or rejection of the act was 1,232, and that the total vote cast, viz: 504, fell short of a majority; and that therefore the act of Feby. 26, 1903, has never been legally accepted or approved, but was null and void.

The trustees appointed by the municipal officers of the City of Gardiner under the act were made parties.

*Will C. Atkins,* for plaintiffs.

The one point involved in this case is contained in the first sentence of section 12 in the act approved Feby. 26th, 1903, viz: "This act shall take effect when approved by a majority vote of the legal voters within said district, etc." "Majority" means a majority of the voters or those entitled to vote, whether they actually do vote or not. Webster and Century Dict. "Words and phrases shall be construed according to the common meaning of the language. Technical words and phrases, and such as have a peculiar meaning, convey such technical or peculiar meaning." R. S., c. 1, § 6, par. 1. Webster defines a technical word as one that belongs properly or exclusively to an art. Most people would place the same construction upon the language which your plaintiffs did.

Counsel cited: *Harshman* v. *Bates County,* 92 U. S. 569.

In that case there appeared a constitutional provision that "the general assembly shall not authorize any county, city, or town to become a stockholder in, or to loan its credit to, any company, association, or corporation, unless two-thirds of the qualified voters of such county, city, or town, at a regular or special election to be held therein, shall assent thereto," adopted in 1865. In this case the court held that "two-thirds of the qualified voters," meant two-thirds of those entitled to vote, whether actually voting or not.

Counsel is aware that the same court in *Carroll County* v. *Smith,* 111 U. S. 556, decided the same point in the opposite way to *Harshman* v. *Bates County,* and the other later decisions have seemed to follow that. In view of the fact that our highest court has interpreted the same language in different ways, and our own courts have never .passed upon the question, it seems proper that it should be decided.

*L. C. Cornish and N. L. Bassett; Geo. W. Heselton,* for defendants.

SITTING: WISWELL, C. J., STROUT, SAVAGE, POWERS, SPEAR, JJ.

STROUT, J. The special act of February 26, 1903, provided in section 12, that it should take effect "when approved by a majority vote of the legal voters within said district" &c. The explanatory act of March 18, 1903, provided that the former act "shall take effect if approved by a majority vote of the legal voters voting at the election held under the provisions of said (first) act." Both acts became law at the date of their approval.

March 10, 1903, the municipal officers of Gardiner called a meeting of the inhabitants of the water district to be held on March 23, 1903, to vote upon the acceptance of the act of February 26. That meeting was duly held, and the total vote was 504, of which 271 voted in favor of acceptance. It is admitted that the number of names on the registration lists in the district was 1,232. It is also admitted that all the requirements of law as to the warrant, posting, publication, registration, returns and certificates as required by the act of February 26, 1903, were fully complied with.

The rights of the parties depend upon the question, whether the term "majority vote of the legal voters" in the first act, meant a majority of all the legal voters in the district, or a majority of those actually voting; and whether, if that act required a majority of all the voters, the explanatory act of March 18, 1903, applied and became effective upon the vote in the meeting of March 23, called before, but actually held after that act was in force.

Under the first act, if the explanatory act had not been passed, the

better construction of the term "majority vote of the legal voters" is a majority of those actually voting. Any other view would be attended with such great and almost insurmountable difficulties that it ought not to be adopted, unless expressed by the Legislature in clear and unmistakable language. How are the legal voters to be ascertained? If the registration list is to afford the evidence, that list may and usually does contain names of persons deceased, or who have removed from the locality, or become otherwise disqualified, and to require a majority of those contained in that list, would require more than a majority of qualified voters. If on the other hand, it is to be construed as meaning voters qualified in fact and in law, without reference to the registration, then the body of voters is as indefinite as though there were no registration, and the actual number must be ascertained in each case by witnesses, entailing a long and difficult hearing, before the vote can be declared and its result known. When and by whom can it be had? Such hearing is utterly impracticable. A construction leading to such result should not be adopted nor such intention imputed to the Legislature unless demanded by express, imperative and unmistakable language. The expression in the act is not of that character. It is a fair presumption that those not voting assent in advance to the action of those who do.

We are not aware that the question has before been raised or decided in this State. But it has been passed upon in several cases in the Supreme Court of the United States. In *Harshman* v. *Bates County,* 92 U. S. 569, it was held that the terms "two-thirds of the qualified voters" meant two-thirds of all those qualified to vote. But that court had held in *St. Joseph Township* v. *Rogers,* 16 Wal. 664, that the terms "majority of the legal voters" meant a majority of those voting. The same construction was adopted in *County of Cass* v. *Johnston,* 95 U. S. 360, where the language was "two-thirds of the qualified voters." To the same effect is *Carroll County* v. *Smith,* 111 U. S. 563. The weight of authority therefore, in that court, as well as its latest expression, is in accord with the view we have taken.

The act of March 18, 1903, is entitled "An act to remove a doubt in the act incorporating the Gardiner Water District." That doubt is the one presented in this case. The act was intended to resolve it.

It is a legislative declaration of what was meant in the original act, by the term "majority vote of the legal voters," and defines it as "a majority vote of the legal voters voting." It became a part of the original act before the vote was taken. There was no necessity for calling another meeting. It applied and was effective upon the action of the meeting held after its passage. A majority of the voters voting approved the original act. That was sufficient and effected a legal approval of the act in accordance with its provisions. The decision below was correct.

*Decree below affirmed.*