## OPINION OF THE JUSTICES
## OF THE SUPREME JUDICIAL COURT
## GIVEN UNDER THE PROVISIONS OF SECTION 3
## OF ARTICLE VI OF THE CONSTITUTION

* * * * * *

QUESTIONS PROPOUNDED BY THE SENATE
IN AN ORDER DATED MAY 11, 1965

ANSWERED MAY 26, 1965

SENATE ORDER PROPOUNDING QUESTIONS

STATE OF MAINE

In Senate, May 11, 1965

WHEREAS, it appears to the Senate of the 102nd Legislature that the following are important questions of law, and that the occasion is a solemn one; and

WHEREAS, there is pending before the Senate a Bill entitled "AN ACT to Authorize Municipalities to Finance Industrial and Recreational Projects," H. P. 1091, L. D. No. 1487; and

WHEREAS, the constitutionality of said Bill has been questioned; and

WHEREAS, it is important that the Legislature be informed as to the constitutionality of said Bill:

NOW THEREFORE BE IT ORDERED, that the Justices of the Supreme Judicial Court are hereby respectfully requested to give to the Senate, according to the provisions of the Constitution on its behalf, their opinion on the following questions, to wit:

*Question 1:*

WILL REVENUE OBLIGATION SECURITIES IS-
SUED UNDER THE PROVISIONS OF SAID BILL
CONSTITUTE THE CREATION OF A DEBT OR LI-
ABILITY OF A CITY OR TOWN WITHIN THE
MEANING OF ARTICLE IX, SECTION 15, OF THE
MAINE CONSTITUTION WHICH WILL HAVE TO
BE TAKEN INTO ACCOUNT IN COMPUTING THE
MAXIMUM AGGREGATE OF DEBTS AND LIABIL-
ITIES WHICH MAY BE CREATED BY A CITY OR
TOWN AS THEREIN PROVIDED FOR?

*Question 2:*

DOES SUBSECTION 1 OF SECTION 5331 OF SAID
BILL, WHICH PROVIDES THAT NO SECURITIES
SHALL BE ISSUED THEREUNDER UNTIL THE
GENERAL PURPOSES FOR WHICH THE SECURI-
TIES ARE TO BE ISSUED AND THE MAXIMUM
PRINCIPAL AMOUNT OF SUCH SECURITIES
"HAVE BEEN APPROVED BY A MAJORITY OF
THE VOTES CAST ON THE QUESTION AND THE
NUMBER OF VOTES CAST IS AT LEAST 20% OF
THE TOTAL VOTE FOR ALL CANDIDATES FOR
GOVERNOR CAST IN THE MUNICIPALITY AT
THE LAST GUBERNATORIAL ELECTION," VIO-
LATE ARTICLE IX, SECTION 8-A, OF THE MAINE
CONSTITUTION WHICH PROVIDES THAT THE
"REGISTERED VOTERS" OF A MUNICIPALITY
MAY, "BY MAJORITY VOTE" AUTHORIZE THE
ISSUANCE OF NOTES OR BONDS?

*Question 3:*

DO SECTIONS 5339, 5340 and 5341 OF SAID BILL,
WHICH PROVIDE THAT PROJECTS FINANCED
UNDER THE BILL SHALL BE EXEMPT FROM
TAXATION SO LONG AS TITLE THERETO RE-

MAINS IN THE NAME OF THE MUNICIPALITY, THAT THE LEASEHOLD INTEREST OF THE LESSEE OF ANY PROJECT IS SUBJECT TO TAXATION AND THAT, AS AN ALTERNATIVE TO TAXATION, A MUNICIPALITY MAY PROVIDE IN THE LEASE OR CONTRACT FOR PAYMENTS IN LIEU OF TAXATION, VIOLATE THE PROVISIONS OF ARTICLE IX, SECTION 8, OF THE MAINE CONSTITUTION?

*Question 4:*

WILL REVENUE OBLIGATION SECURITIES ISSUED UNDER THE PROVISIONS OF SAID BILL FOR THE PURPOSE OF PAYING THE COST OF ACQUIRING, CONSTRUCTING, RECONSTRUCTING, RENEWING OR REPLACING REVENUE PRODUCING RECREATIONAL FACILITIES, BE ISSUED FOR A PROPER MUNICIPAL PURPOSE?

In Senate Chamber

May 11, 1965

Name: Violette

Read and Passed

County: Aroostook

_____

EDWIN H. PERT,

Secretary

A true copy

Attest: EDWIN H. PERT

Secretary of the Senate

NEW DRAFT OF: H. P. 822, L. D. 1113

ONE HUNDRED AND SECOND LEGISLATURE

Legislative Document                                No. 1487

H. P. 1091          House of Representatives, April 22, 1965

Reported by Mr. Richardson, from Committee on Judiciary. Printed under Joint Rules No. 10.

JEROME G. PLANTE, Clerk

STATE OF MAINE

---

IN THE YEAR OF OUR LORD NINETEEN HUNDRED
SIXTY-FIVE

---

AN ACT to Authorize Municipalities to Finance Industrial
and Recreational Projects.

Be it enacted by the People of the State of Maine, as follows:

Sec. 1.  R. S., T. 30, c. 242, additional.  Title 30 of the Revised Statutes is amended by adding a new chapter 242 to read as follows:

'CHAPTER 242

MUNICIPAL INDUSTRIAL AND RECREATIONAL
OBLIGATIONS ACT

§ 5325.  General grant of powers

A municipality is authorized and empowered:

1.  Revenue-producing industrial or recreational facilities. To acquire, construct, reconstruct, renew and replace industrial and recreational projects within or partly within the corporate limits of the municipality;

2. Securities. To issue revenue obligation securities of the municipality as provided to pay the cost of such acquisition, construction, reconstruction, renewal or replacement;

3. Refunding securities. To issue revenue refunding obligation securities of the municipality as provided to refund any revenue obligation securities then outstanding which shall have been issued under this chapter;

4. Acquisition of property. The municipal officers are authorized and empowered to acquire from funds provided under the authority of this chapter, such lands, structures, property, rights, rights-of-way, franchises, easements and other interests in lands, including lands lying under water and riparian rights, which are located within the State as it may deem necessary or convenient for the construction or operation of any industrial or recreational project, upon such terms and conditions as they shall deem reasonable and proper, and to dispose of any of the foregoing in the exercise of its powers and the performance of its duties hereunder;

5. Contracts; employment of specialists. To make and enter into all leases, contracts and agreements necessary or incidental to the performance of its duties and the execution of its powers under this chapter, including a trust agreement or trust agreements securing any revenue obligation securities issued hereunder, and to employ such consulting and other engineers, attorneys, accountants, construction and financial experts, superintendents, managers and such other employees and agents as deemed necessary, and to fix their compensation; provided all such expenses shall be payable solely from funds made available under this chapter;

6. Federal contracts. To enter into contracts with the Government of the United States or any agency or instrumentality thereof, or with any other municipality providing for or relating to the revenue-producing industrial or recreational facility;

7. Federal aid. To accept from any authorized agency of the Federal Government loans or grants for the planning, construction or acquisition of any revenue-producing industrial or recreational facility and to enter into agreements with such agency respecting any such loans or grants, and to receive and accept aid and contributions from any source of either money, property, labor or other things of value, to be held, used and applied only for the purposes for which such loans, grants and contributions may be made; and

8. General powers. To do all acts and things necessary or convenient to carry out the powers expressly granted in this chapter.

§ 5326. Definitions

The listed terms as used in this chapter are defined as follows, unless a different meaning is plainly required by the context:

1. Revenue obligation security. "Revenue obligation security" means a note, bond or other evidence of indebtedness to the payment of which is pledged the revenues as provided in section 5334.

2. Industrial project. "Industrial project" means any building, structure, machinery, equipment or facilities which may be deemed necessary for manufacturing, processing, or assembling raw materials or manufactured products, or research, together with all lands, property, rights, rights-of-way, franchises, easements and interests in lands which may be acquired by the municipality for the construction or operation of the industrial project.

3. Recreational project. "Recreational project" means any building or other real estate improvement and, if a part thereof, the land upon which the same may be located, or any interest in land by lease or otherwise, or any equipment used or usable in connection with recreational facilities of

whatever kind and nature, including but not limited to marinas, swimming pools, golf courses, camp grounds, picnic areas, lodges, ski resorts, arenas and any other recreational facilities which in the judgment of the municipal officers are necessary or convenient to the exercise of the powers conferred by this chapter.

4. Project. "Project" means industrial project or recreational project as the context may permit or require.

5. Cost. "Cost" as applied to a revenue-producing industrial or recreational facility shall include the purchase price of any such facility, the cost of construction, the cost of all labor, materials, machinery and equipment, the cost of improvements, the cost of all lands, property, rights, easements and franchises acquired, financing charges, interest prior to and during construction and, if deemed advisable by the municipal officers, for one year after completion of construction, cost of plans and specifications, surveys and estimates of cost and of revenues, cost of engineering and legal services, and all other expenses necessary or incident to determining the feasibility or practicability of such construction, administrative expense and such other expenses as may be necessary or incident to the financing herein authorized. Any obligation or expenses incurred by the State or the municipality in connection with any of the foregoing items of cost may be regarded as a part of such cost and reimbursed to the State or municipality out of the proceeds of revenue obligation securities issued under this chapter.

§ 5327. Industrial and Recreational Finance
Approval Board

The Industrial and Recreational Finance Approval Board, hereinafter in this chapter called the "board," shall consist of 7 members, including the Treasurer of State and 6 members at large appointed by the Governor with the advice and consent of the Council for a period of 3 years, provided that,

of the members first appointed, 2 shall be appointed for a term of one year, 2 for a term of 2 years and 2 for a term of 3 years, and in each case until their respective successors shall be appointed and qualified. A vacancy in the office of an appointive member, other than by expiration, shall be filled in like manner as an original appointment, but only for the remainder of the term of the retiring member. Appointive members may be removed by the Governor with the advice and consent of the Council for cause. The board shall elect one of its members as chairman, one as vice-chairman and shall employ a manager, who shall be secretary. Four members of the board shall constitute a quorum. The affirmative vote of 4 members, present and voting, shall be necessary for any action taken by the board. No vacancy in the membership of the board shall impair the right of the quorum to exercise all rights and perform all the duties of the board. The board is hereby constituted a public instrumentality and exercise by the board of the powers conferred by this chapter shall be deemed to be the performance of an essential governmental function.

§ 5328. Powers

The board is authorized and empowered to:

1. **Rules.** Adopt rules for the regulation of its affairs and the conduct of its business.

2. **Assistance to municipalities.** Assist municipalities in negotiations with prospects, drafting of contracts, arranging for financing and negotiations for sale of securities to be issued under this chapter.

3. **Certificates of approval.** To approve or disapprove projects and issue certificates of approval upon application of municipalities proposing to issue revenue obligation securities under this chapter.

4. Policy. It shall be the policy of the board in considering the propriety of issuing a certificate of approval to determine to its satisfaction that:

A. The project will make a significant contribution to the economic growth of the State;

B. The project will not create a competitive advantage to any party to a contract entered into by any municipality under this chapter or substantial detriment to existing industry;

C. Adequate provision is being made to meet any increased demand upon public facilities that might result from such project; and

D. In cases where it is proposed to relocate an industrial or recreational facility existing in the State, there is a clear economic justification for such relocation.

E. The provisions of any agreement for payments in lieu of taxation are in accordance with the provisions of this chapter.

5. Effect of certificate. A certificate of approval issued hereunder shall be conclusive proof that the board has made the determinations required by this section.

6. Express powers. To do all acts and things necessary or convenient to carry out the powers expressly granted in this chapter.

§ 5329. Duties of manager

The manager shall be the chief administrative officer for the board and as such shall direct and supervise the administrative affairs and technical activities of the board in accordance with rules, regulations and policies as set forth by the board and he shall receive such compensation as shall be fixed by the board with the approval of the Governor and

Council. It shall be the duty of the manager among other things to:

1. Attend all meetings of the board and to act as its secretary and keep minutes of all its proceedings;

2. Approve all accounts for salaries, per diems, allowable expenses of the board or of any employee or consultant thereof, and expenses incidental to the operation of the board;

3. Appoint, under the provisions of the Personnel Law, such employees as the board may require, and such assistants, agents or consultants as may be necessary for carrying out the purposes of this chapter;

4. Make to the board an annual report documenting the actions of the board and such other reports as the board may request;

5. Maintain a close liaison with the Maine Industrial Building Authority and the Department of Economic Development and to provide assistance to municipalities to facilitate the planning and financing of industrial and recreational projects;

6. Make recommendations and reports in cooperation with the Maine Industrial Building Authority and the Department of Economic Development to the board on the merits of any proposed project and on meritorious locations; and

7. Perform such other duties as may be directed by the board in the carrying out of the purposes of this chapter.

§ 5330. Conflicts of interest

No member of the board shall participate in any decision on any contract entered into by any municipality under this chapter if he has any interest, direct or indirect, in any

firm, partnership, corporation or association which may be a party to such contract, or if he has any interest, direct or indirect, in any firm, partnership, corporation or association which may rent, lease or otherwise occupy any premises constructed by such municipality.

## § 5331. Issuance of revenue obligation securities

1. **Balloting for securities; actions to contest validity.** Upon receipt of the certificate of approval from the board as provided in section 5328, the municipal officers of any municipality are authorized to provide by resolution, at one time or from time to time, for the issuance of revenue obligation securities of the municipality for the purpose of paying the cost of acquiring, constructing, reconstructing, renewing or replacing any revenue-producing industrial or recreational facility, provided no revenue obligation securities of a municipality shall be issued until the general purpose for which the securities are to be issued and the maximum principal amount of such securities to be authorized have been approved by ballot by a majority of the votes cast on the question and the number of votes cast is at least 20% of the total vote for all candidates for Governor cast in the municipality at the last gubernatorial election. The ballot submitted to the voters of a municipality to authorize the issuance of revenue obligation securities shall state the general purpose for which the proposed securities are to be issued and the maximum principal amount of the proposed securities authorized to be issued. The voting at meetings held in municipalities shall be held and conducted in accordance with sections 2061 to 2064, even though the municipality has not accepted the provisions of sections 2061. The result of such vote shall be declared by the municipal officers and due certificate thereof shall be filed by the clerk of the municipality with the board. Any action or proceeding in any court to set aside a resolution authorizing the issuance of revenue obligation securities under this chapter or to ob-

tain any relief upon the ground that such resolution is invalid must be commenced within 30 days after the holding of the election to approve such securities. After the expiration of such period of limitation, no right of action or defense founded upon the invalidity of such resolution or any of its provisions shall be asserted nor shall the validity of such resolution or any of its provisions be open to question in any court upon any ground whatever.

2. Maturity; interest; form; use of proceeds. The securities of each issue of revenue obligation securities shall be dated, shall mature at such time or times not exceeding 25 years from their date or dates, and shall bear interest at such rate or rates not exceeding 6% per year, as may be determined by the municipal officers, and may be made redeemable before maturity, at the option of the municipality, at such price or prices and under such terms and conditions as may be fixed by the municipal officers prior to the issuance of the securities. The municipal officers shall determine the form of the securities, including any interest coupons to be attached thereto, and the manner of execution of the securities, and shall fix the denomination or denominations of the securities and the place or places of payment of principal and interest, which may be at any bank or trust company within or without the State. Revenue obligation securities shall be executed in the name of the municipality by the manual or facsimile signature of such official or officials as may be authorized in said resolution to execute such securities but at least one signature on each security shall be a manual signature. Coupons, if any, attached to securities, shall be executed with the facsimile signature of the officer or officers of the municipality, designated in said resolution. In case any officer whose signature or a facsimile of whose signature shall appear on any securities or coupons shall cease to be such officer before the delivery of such securities, such signature or such facsimile shall nevertheless be valid

and sufficient for all purposes the same as if he had remained in office until such delivery. Notwithstanding any of the other provisions of this chapter or any recitals in any securities issued under this chapter, all such securities shall be deemed to be negotiable instruments issued under the laws of this State. The securities may be issued in coupon or registered form or both, as the municipal officers may determine, and provision may be made for the registration of any coupon securities as to principal alone and as to both principal and interest, and for the reconversion into coupon securities of any securities registered as to both principal and interest. The municipal officers may sell such securities in such manner, either at public or private sale, and for such price, as they may determine to be for the best interests of the municipality, but no such sale shall be made at a price so low as to require the payment of interest on the money received therefor at more than 6% per year, computed with relation to the absolute maturity or maturities of the bonds in accordance with standard tables of bond values, excluding from such computation the amount of any premium to be paid on redemption of any securities prior to maturity. The municipal officers shall not sell such securities to any firm, partnership, corporation or association which is a party to any contract pertaining to the project being financed by such securities or which is to rent, lease or otherwise occupy any premises constituting part of such project, or to any affiliate or subsidiary thereof. The proceeds of the securities of each issue shall be used solely for the purpose for which such securities shall have been authorized, and shall be disbursed in such manner and under such restrictions, if any, as the municipal officers may provide in the resolution authorizing the issuance of such securities or in the trust agreement hereinafter mentioned securing the same. If the proceeds of such securities, by error of estimates or otherwise, shall be less than such cost,

additional securities may in like manner be issued to provide the amount of such deficit and, unless otherwise provided in the authorizing resolution or in the trust agreement securing such securities, shall be deemed to be of the same issue and shall be entitled to payment from the same fund without preference or priority of the securities first issued for the same purpose, provided the aggregate principal amount of revenue obligation securities of a municipality may not exceed the amount approved by the voters as provided. The resolution providing for the issuance of revenue obligation securities, and any trust agreement securing such securities, may contain such limitations upon the issuance of additional revenue obligation securities as the municipal officers may deem proper, and such additional securities shall be issued under such restrictions and limitations as may be prescribed by such resolution or trust agreement. The municipal officers may provide for the replacement of any securities which shall become mutilated or be destroyed or lost. Revenue obligation securities may be issued under this chapter without obtaining the consent of any department, division, commission, board, bureau or agency of the State and without any other proceedings or the happening of any other condition or things than those proceedings, conditions or things which are specifically required by this chapter.

3. Credit of State or municipalities not pledged. Securities issued under this chapter shall not constitute any debt or liability of the State or of any municipality therein or any political subdivision thereof or a pledge of the faith and credit of the State or of any such municipality or political subdivision, but shall be payable solely from revenues of the project for which they are issued and all such securities shall contain on their face a statement to that effect. The issuance of securities under this chapter shall not directly or indirectly or contingently obligate the State or any municipality or political subdivision to levy or to pledge any

form of taxation whatever therefor or to make any appropriation for their payment.

4. Anticipatory borrowing. The municipal officers authorized to issue securities may borrow money in anticipation of their sale by issuing temporary notes and renewal notes, the total face amount of which does not exceed at any one time outstanding the authorized amount of the securities, but the period of such anticipatory borrowing shall not exceed one year and the time within which such securities are to become due shall not be extended by such anticipatory borrowing beyond the time fixed in the vote authorizing their issue or, if no term is there specified, beyond the term permitted by law.

§ 5332. Pledges and covenants; trust agreement

In the discretion of the municipal officers any revenue obligation securities issued under this chapter may be secured by a trust agreement by and between the municipality and a corporate trustee, which may be any trust company or bank having the powers of a trust company within or without the State. Such trust agreement or the resolution providing for the issuance of such securities may pledge or assign the revenues of the industrial or recreational project, and may contain such provisions for protecting and enforcing the rights and remedies of the security holders as may be reasonable and proper and not in violation of law, including covenants setting forth the duties of the municipal officers in relation to the acquisition of property and the construction, reconstruction, renewal, replacement and insurance of the project in connection with which such securities shall have been authorized, the rents to be charged, and the custody, safeguarding and application of all moneys. It shall be lawful for any bank or trust company incorporated under the laws of the State which may act as depositary of the proceeds of securities or of revenues to furnish such

indemnifying bonds or to pledge such securities as may be required by the municipal officers. Any such trust agreement may set forth the rights and remedies of the security holders and of the trustee, and may restrict the individual right of action by security holders.

In addition to the foregoing, any such trust agreement may, to secure the payment of the revenue obligation securities, mortgage the project or any part thereof and create a lien upon any or all of the real or personal property constituting a part of the project. Such trust agreement or resolution may contain such other provisions as the municipal officers may deem reasonable and proper for the security of the security holders.

All expenses incurred in carrying out the provisions of such trust agreement or resolution may be treated as a part of the cost of the operation of the project. All pledges of revenue under this chapter shall be valid and binding from the time when such pledge is made; all such revenues so pledged and thereafter received by the municipality shall immediately be subject to the lien of such pledges without any physical delivery thereof or further action under the Uniform Commercial Code or otherwise, and the lien of such pledges shall be valid and binding as against all parties having claims of any kind in tort, contract or otherwise against the municipality, irrespective of whether such parties have notice thereof.

§ 5333.  Rentals

Before the issuance of revenue obligation securities for paying the cost of any industrial or recreational project provision shall be made by leases or contracts which in the judgment of the board will be adequate to assure that the municipality will at all times have revenues sufficient:

1.  Principal and interest.  To pay the principal of and the interest of such securities as the same shall become due

and payable and to create and maintain reserves for such purposes; and

2. Cost of project. To pay the cost of maintaining, repairing and operating the project unless provision shall be made in such lease or contract for such maintenance, repair and operation.

## § 5334. Sinking fund

All rentals and other revenues derived from any project for which a single issue of revenue obligation securities shall have been issued, except such part thereof, if any, as may be required to pay the cost of maintenance, repair and operation and to provide reserves therefor as may be provided in the resolution authorizing the issuance of the securities or in the trust agreement, shall be set aside at such regular intervals as may be provided in such resolution or trust agreement and deposited to the credit of a sinking fund which is hereby pledged to and charged with, the payment of the interest on such securities as such interest shall fall due, the principal of such securities as the same shall fall due, the necessary charges of paying agents for paying principal and interest, and the redemption price or the purchase price of securities retired by call or purchase. The use and disposition of moneys to the credit of such sinking fund shall be subject to such regulations as may be prescribed in the resolution authorizing the issuance of the securities or in the trust agreement and, except as may otherwise be provided in such resolution or trust agreement, such sinking fund shall be a fund for the benefit of all securities without distinction or priority of one over another.

## § 5335. Trust funds

All moneys received pursuant to the authority of this chapter shall be deemed to be trust funds, to be held and

applied solely as provided in this chapter. Any officer to whom, or any bank, trust company or other fiscal agent or trustee to which such moneys shall be paid shall act as trustee of such moneys and shall hold and apply the same for the purposes hereof, subject to such regulations as this chapter and such resolution or trust agreement may provide.

## § 5336. Remedies

Any holder of revenue obligation securities issued under this chapter or of any of the coupons appertaining thereto, and the trustee under any trust agreement, except to the extent the rights given may be restricted by the resolution authorizing the issuance of such securities or such trust agreement, may, either by action, mandamus or other proceeding, protect and enforce any and all rights under the laws of the State or granted hereunder or under such resolution or trust agreement, including the appointment of a receiver, and may enforce and compel the performance of all duties required by this chapter or by such resolution or trust agreement to be performed by the municipality, the municipal officers or by any officer thereof, including the collecting of rates, fees and charges for the use of the industrial or recreational project, and any such suit, action or proceeding shall be brought for the benefit of all the holders of such securities and coupons.

## § 5337. Revenue refunding securities

The municipal officers are authorized to provide by resolution for the issuance of revenue refunding securities of the municipality for the purpose of refunding any revenue securities then outstanding which shall have been issued under this chapter, including the payment of any redemption premium thereon and any interest accrued or to accrue to the date of redemption of such securities, and, if deemed advisable by the municipal officers, for the additional purpose of constructing improvements, extensions, enlargements or

additions of the revenue-producing industrial or recreational project in connection with which the securities to be refunded shall have been issued. The municipal officers are authorized to provide by resolution for the issuance of revenue obligation securities of the municipality for the combined purpose of refunding any revenue securities or revenue refunding securities then outstanding which shall have been issued under this chapter, including the payment of any redemption premium thereon and any interest accrued or to accrue to the date of redemption of such securities, and paying all or any part of the cost of acquiring or constructing any additional revenue-producing industrial or recreational project or part thereof, or any improvements, extensions, enlargements or additions of any revenue-producing industrial or recreational project. The issuance of such securities, the maturities and other details thereof, the rights and remedies of the holders thereof, and the rights, powers, privileges, duties and obligations of the municipality and the municipal officers with respect to the same, shall be governed by the foregoing provisions of sections of this chapter insofar as the same may be applicable.

## § 5338. Authorizing resolution

Notwithstanding any other law, either general, special or local, or any charter or charter amendments theretofore adopted by such municipality, or any ordinance, resolution, bylaw, rule or regulation of such municipality, it shall not be necessary to publish any resolution adopted under this chapter, either before or after its final passage.

## § 5339. Tax exemptions

The exercise of the powers conferred by this chapter shall be deemed to constitute the performance of governmental functions.

1. Revenue-producing industrial and recreational projects financed under this chapter shall be deemed to be used

for public purposes and shall be exempt from taxation so long as title to the project shall remain in the name of the municipality.

2. Revenue obligation securities issued under this chapter, their transfer and the income therefrom, including any profits made on the sale thereof, shall at all times be exempt from taxation within the State.

§ 5340. Leasehold interest taxable

The leasehold interest of the lessee of any industrial or recreational project is subject to taxation in the manner provided for similar interests in Title 36, Section 551.

§ 5341. Alternative method; payment in lieu of taxation

Subject to ratification by the board, the municipal officers of a municipality may, as an alternative to taxation, provide in the lease or contract a proposal for payments in lieu of taxation in accordance with the following terms and conditions:

1. A provision for payments in lieu of taxation may run for a term of up to 5 years with an option to negotiate for renewal for a term of up to 5 years and no longer.

2. The amount of the payment in lieu of taxation shall be the product of 80% of the initial value of the fee interest at the time of completion of construction times the municipal tax rate of the year of completion. Each year thereafter during the period of the agreement for payments in lieu of taxation or the renewal thereof the amount shall be increased by 3%.

A. In the case of an existing building, the initial value shall be 80% of the purchase price.

B. In the case of equipment with a useful life of 10 years or less, the initial value shall be 50% of the purchase price.

C. Payments in lieu of taxation under renewal agreements shall be the product of the initial value times the tax rate of the year in which the option is exercised.

3. Any agreement for payment in lieu of taxation in any lease or contract approved by the board as provided in Section 5328 shall be deemed to be a fair and equitable method of computing the tax liability of the lessee.

4. Provisions for payments in lieu of taxation shall not apply to subsequent additions of real estate or equipment.

§ 5342. Purpose

It is declared that there is a state-wide need for industrial and recreational projects to provide enlarged opportunities for gainful employment by the people and thus to insure the preservation and betterment of the economy of the State and the living standards and health of its inhabitants.

§ 5343. Liberal construction

This chapter, being necessary for the welfare of the municipalities and their inhabitants, shall be liberally construed to effect the purposes thereof.

§ 5344. Severability

The provisions of this chapter are severable and if any provisions thereof shall be held unconstitutional by any court of competent jurisdiction, the decision of such court shall not affect or impair any of the remaining provisions or sections.

§ 5345. Title

This chapter may be cited as the "Municipal Industrial and Recreational Obligations Act." '

Sec. 2. Appropriation. There is appropriated from the General Fund to the Industrial and Recreational Finance

Approval Board to carry out the purposes of this Act the sum of $13,000 for the fiscal year ending June 30, 1966 and the sum of $15,500 for the fiscal year ending June 30, 1967. The breakdown shall be as follows:

INDUSTRIAL AND RECREATIONAL FINANCE
APPROVAL BOARD

|  | 1965-66 | 1966-67 |
| --- | --- | --- |
| Personal Services | $10,000 | $12,500 |
| All Other | 2,000 | 2,500 |
| Capital Expenditures | 1,000 | 500 |
|  | $13,000 | $15,500 |

ANSWERS OF THE JUSTICES

*To the Honorable Senate of the State of Maine:*

In compliance with the provisions of Section 3 of Article VI of the Constitution of Maine, we, the undersigned Justices of the Supreme Judicial Court, have the honor to submit the following answers to the questions propounded on May 11, 1965.

QUESTION (1): Will revenue obligation securities issued under the provisions of said bill constitute the creation of a debt or liability of a city or town within the meaning of Article IX, Section 15, of the Maine Constitution which will have to be taken into account in computing the maximum aggregate of debts and liabilities which may be created by a city or town as therein provided for?

ANSWER: This question is answered in the negative.

Section 5331, subsection 3, constricts the characteristics of the securities which H. P. 1091, L. D. No. 1487 as enacted is designed to sanction. Such securities are redeemable only to the extent of and from revenues produced by the very project for which they may be issued.

" * * * a city does not create an indebtedness within the contemplation of the constitutional proviso by obtaining or purchasing property which is to be paid for solely and exclusively from a special fund derived from the income of the property with no liability on the part of the city to pay such purchase price or any part thereof directly or indirectly with funds raised by taxation or from a fund which must be replenished by funds raised by taxation. * * *." *Sager, et al.* v. *Stanberry*, 336 Mo. 213, 78 S. W. (2nd) 431, 438.

The revenue obligation securities contemplated by the Bill would not constitute municipal debts or liabilities within the purview of Article IX, § 15 of the Maine Constitution.

See *People* v. *Chicago Transit Authority*, 392 Ill. 77, 64 N. E. (2nd) 4, 12; *Branigar* v. *Village of Riverdale*, 396 Ill. 534, 72 N. E. (2nd) 201, 206; McQuillin, Municipal Corporation, 3rd ed. § 41.34; and 64 C. J. S., Municipal Corporations, § 1853.

This answer does not pertain to the "Anticipatory borrowing" provided for in § 5331, subsection 4.

QUESTION (2): Does subsection 1 of Section 5331 of said bill, which provides that no securities shall be issued thereunder until the general purposes for which the securities are to be issued and the maximum principal amount of such securities "have been approved by a majority of the votes cast on the question and the number of votes cast is at least 20% of the total vote for all candidates for Governor cast in the municipality at the last gubernatorial election," violate Article IX, Section 8-A, of the Maine Constitution which provides that the "registered voters" of a municipality may, "by majority vote" authorize the issuance of notes or bonds?

ANSWER: This question is answered in the negative.

Article IX, § 8-A permits the issue of notes or bonds by a municipality for the purpose of constructing industrial buildings for lease or for sale by the municipality when the issuance of such notes or bonds has been authorized by a majority vote of the registered voters of that municipality. Such a majority is to be computed as one or more in excess of one half of the registered voters who voice their wills or cast their ballots.

See *Chamberlain* v. *Dover*, 13 Me. 466, 472; and *Foy, et al.* v. *Gardiner Water District*, 98 Me. 82, 84, 56 A. 201.

The constitutional requirement can be satisfied by the casting of a single affirmative vote or by two such votes out of a total of three votes cast at a municipal meeting duly called and notified. A number of votes equal to "20% of the total vote for all candidates for Governor cast in the municipality at the last gubernatorial election" probably would be in excess of the minimum fixed by the Constitution.

It (the constitution) fixes a minimum limit of restriction below which the legislature may not go, but it does not prescribe the maximum limitation which the legislature may adopt. *Union High School District No. 1, Skagit County* v. *Taxpayers of Union High School District No. 1, Skagit County*, 172 P. (2nd) 591, 595 (Wash. 1946) as quoted and affirmed in *Henderson* v. *Town of Tumwater*, 285 P. (2nd) 119 (Wash. 1955) which case expresses the weight of authority.

See *Robb* v. *City of Tacoma, et al.*, 28 P. (2nd) 327 (Wash. 1933) and Annot. 91 A. L. R. 1010, 1021; also *Varney* v. *City of Albuquerque*, 55 P. (2nd) 40 (N. M. 1936).

Article IX, § 8-A does not pertain to revenue obligation securities issued by municipalities for the acquisition of recreational projects.

QUESTION (3) : Do Sections 5339, 5340 and 5341 of said bill, which provide that projects financed under the bill shall be exempt from taxation so long as title thereto remains in the name of the municipality, that the leasehold interest of the lessee of any project is subject to taxation and that, as an alternative to taxation, a municipality may provide in the lease or contract for payments in lieu of taxation, violate the provisions of Article IX, Section 8, of the Maine Constitution?

ANSWER: With respect to Section 5339, we answer in the affirmative.

The language of this section is in some respects obscure and not free from doubt as to legislative intention. The section read as a whole, however, indicates to us that the fee is to be exempted from taxation to the municipality because and only if the holding of title by the municipality is deemed a governmental function and for a public purpose. The Legislature cannot by mere appellation or designation transform what are in reality mere corporate powers conferred by it upon municipalities into governmental functions. No more can it change private purposes into public purposes whenever the facts are otherwise. *Brown* v. *Gerald,* 100 Me. 351, 360, 61 A. 785. Writing of the dual corporate and governmental capacity of a municipality, our Supreme Judicial Court said in *Libby* v. *Portland,* 105 Me. 370, 372:

> "To the former belongs the performance of acts done in what may be called their private character, in the management of property or rights held voluntarily for their own immediate profit and advantage as a corporation, although ultimately inuring to the benefit of the public, such as the ownership and management of real estate, the making of contracts and the right to sue and be sued; to the latter belongs the discharge of duties imposed upon them by the Legislature for the pub-

> lic benefit, such as the support of the poor, the maintenance of schools, the construction and maintenance of highways and bridges, and the assessment and collection of taxes. This distinction is sharply defined in a long line of decisions * * * . The Revised Statutes, recognize this two fold character, ch. 4, sec. 1, making the inhabitants of each town a body corporate, and ch. 1, sec. 1, making towns a subdivision of the State."

The industrial and recreational projects envisioned by the proposed legislation are inescapably designed to serve private purposes in spite of legislative fiat to the contrary and a tax exemption obviously intended to be predicated upon the existence of a public purpose would, where no such purpose exists, violate constitutional prohibitions.

With respect to Section 5340 we answer in the negative.

This section reiterates the provisions of 36 M. R. S. A., § 551 and is valid.

With respect to Section 5341 we answer in the affirmative.

This section violates Article IX, § 8 of the Constitution as it proposes to establish a mathematical formula for assessment for tax purposes of new structures upon a portion of 80% only of "the initial value of the fee interest at the time of completion of construction." Eighty percent of such initial value is not an equivalent of the "just value" prescribed by Article IX, § 8 of the Constitution. Furthermore 80% of the initial value for assessment and the tax rate in effect for the year of completion is fixed for the life of the lease or contract. This objectionable characteristic is carried forward to equipment and renewal agreements.

Section 5341 ostensibly provides for payments in lieu of taxation. For privately owned property and for property owned by a municipality in its corporate capacity, and not

appropriated to public uses, there can be no substitute for the tax approach required by Article IX, § 8 of the Constitution.

Section 5341 ignores the existence of State and County taxes. It attempts to provide discriminating tax treatment and would result in the necessity of other taxpayers, even competitors, paying the deficit. The so styled payment in lieu of taxation would in reality be equivalent to a gift. *Brewer Brick Co.* v. *Brewer*, 62 Me. 62.

Additionally it is to be noted that granted taxation under § 5340, it is unconstitutional to provide by contract payments in lieu thereof. *Brewer, supra.*

QUESTION (4): Will revenue obligation securities issued under the provisions of said bill for the purpose of paying the cost of acquiring, constructing, reconstructing, renewing or replacing revenue producing recreational facilities, be issued for a proper municipal purpose?

ANSWER: This question is answered in the affirmative.

All capacities, powers and duties of municipalities are derived from legislative enactments. *Hooper* v. *Emery*, 14 Me. 375; *Concord* v. *Delaney*, 58 Me. 309.

The Constitution contains no inhibitions against the authorization by the Legislature of the municipal issue of revenue obligation securities such as those described in the bill for the acquisition of recreational projects and the sale and lease of such recreational facilities.

> " * * * The power is manifestly legislative in character, and hence must be upheld unless clearly prohibited to the legislature by some section or clause of the State or Federal Constitution. No exercise of the legislative power is to be held thus prohibited unless the prohibition is manifest, beyond a reasonable doubt, as has often been iterated in

prior opinions of this court * * *." *Bangor* v. *Peirce*, 106 Me. 527, 532, 76 A. 945.

Dated at Augusta, Maine, this twenty-sixth day of May, 1965.

Respectfully submitted:

ROBERT B. WILLIAMSON

DONALD W. WEBBER

WALTER M. TAPLEY, JR.

FRANCIS W. SULLIVAN

HAROLD C. MARDEN

ABRAHAM M. RUDMAN