**NORTHEAST SHOE CO., Inc.**

v.

**The INDUSTRIAL AND RECREATIONAL FINANCE APPROVAL BOARD and Frank G. Chapman.**

Supreme Judicial Court of Maine.

Oct. 19, 1966.

Rudman, Rudman & Carter, by Paul L. Rudman, Bangor, for plaintiff.

Leon V. Walker, Jr., Asst. Atty. Gen., Augusta, for defendants.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN and DUFRESNE, JJ.

WILLIAMSON, Chief Justice.

On report. This is a complaint for a declaratory judgment and relief in the nature of mandamus by the Northeast Shoe Co., Inc., the plaintiff, against the Industrial and Recreational Finance Approval Board [the Board], a public instrumentality established under Section 5327 of the "Muni-

cipal Industrial and Recreational Obligations Act" (the Act), and Frank G. Chapman, its acting manager. Rule 57, M.R.C.P. (declaratory judgment); Rule 80B, M.R. C.P. (review of administrative action); *First Manf'rs Nat'l Bk. et al. v. Johnson*, 161 Me. 369, 212 A.2d 840; 30 M.R.S.A. §§ 5325–5344 (the Act).

Since November 1965 the plaintiff and the defendants have been negotiating for the construction of a proposed industrial facility or project in Pittsfield. In May 1966 pending arrangements for financing under the Act and after further extensive negotiations between the Board and the municipal officers of Pittsfield, the plaintiff commenced construction of the proposed facility.

In July 1966 the plaintiff requested a hearing on its pending application filed under the rules of the Board for the certificate of approval by the Board required before submission of the proposal to the voters under Sections 5328, subd. 3 and 5331, subd. 1. The plaintiff in its request said, "Construction contracts have been let by Northeast Shoe Company, Inc. for the full construction of the building. Construction was commenced May 11, 1966, and will be completed on or about December 30, 1966." The Board, in acting upon this request, voted not to grant a hearing for the following reasons:

"1. Article IX, Section 8–A, of the Maine Constitution permits the issuance of municipal bonds or notes 'for the purpose of constructing buildings for industrial use,' and, while we believe that this may apply only to General Obligation bonds or notes of municipalities, sufficient doubt exists in our minds to warrant refusal to grant a hearing that would lead to the issuance of a Certificate of Approval where the building is already under construction by the applicant with the use of temporary financing.

"2. The Maine Court in Opinion of the Justices, 161 Maine 182, at 208 [210 A.2d

683], in answering question No. 4 concerning the Act, did not render an answer sufficiently broad to cover industrial facilities financed by revenue obligation securities. We are of the opinion that if this same case arose in the recreational field the answer to question No. 4 is sufficiently clear to sustain the issuance of the Certificate of Approval."

The plaintiff prays: first, that we declare that Section 8–A of Article IX of the Maine Constitution, below, applies only to general obligation notes or bonds issued by a municipality and that revenue obligation securities may be issued under the Act to acquire a fully or partially constructed industrial facility or project; or second, that if Section 8–A is applicable to such revenue obligations nevertheless they may be issued under the Act in the circumstances of the instant case; and third, that the Board and its manager be ordered to hear the plaintiff upon its request for a certificate of approval.

Article IX, Section 8–A of the Maine Constitution reads:

"For the purposes of fostering, encouraging and assisting the physical location, settlement and resettlement of industrial and manufacturing enterprises within the physical boundaries of any municipality, the registered voters of that municipality may, by majority vote, authorize the issuance of notes or bonds in the name of the municipality for the purpose of constructing buildings for industrial use, to be leased or sold by the municipality to any responsible industrial firm or corporation."

Following are pertinent provisions of the Act:

"§ 5325. *General grant of powers*

A municipality is authorized and empowered:

1. *Revenue-producing industrial or recreational facilities.* To acquire, con-

struct, reconstruct, renew and replace industrial and recreational projects within or partly within the corporate limits of the municipality;

"2. *Securities.* To issue revenue obligations securities of the municipality as provided to pay the cost of such acquisition, construction, reconstruction, renewal or replacement; * * *"

Section 5331, subd. 1 provides for the issuance after approval by the voters "of revenue obligation securities of the municipality for the purpose of paying the cost of acquiring, constructing, reconstructing, renewing or replacing any revenue-producing industrial or recreational facility, * * *"

"3. *Credit of State or municipalities not pledged.* Securities issued under this chapter shall not constitute any debt or liability of the State or of any municipality therein or any political subdivision thereof or a pledge of the faith and credit of the State or of any such municipality or political subdivision, but shall be payable solely from revenues of the project for which they are issued and all such securities shall contain on their face a statement to that effect. The issuance of securities under this chapter shall not directly or indirectly or contingently obligate the State or any municipality or political subdivision to levy or to pledge any form of taxation whatever therefor or to make any appropriation for their payment."

■ The revenue obligation securities issued under the Act are not municipal debts or liabilities within the debt limits imposed by Section 15 of Article IX of the Maine Constitution.[1] No plainer language could have been used to make certain that the municipality should not be obligated to pay

the securities so created. Opinion of the Justices, 161 Me. 182, 203, 210 A.2d 683.

■ There is no distinction whatsoever in the Act, enacted in 1965, between revenue obligation securities issued on an industrial project and securities of like nature issued on a recreational project. The Act covers the financing of both types of projects by means of revenue obligation securities.

The question is whether the constitutional limitation in Article IX, Section 8–A of the Constitution, supra, to issuance of notes or bonds "for the purpose of constructing buildings for industrial use" is applicable to revenue obligation securities issued under the Act for an industrial project.

We are satisfied that notes and bonds under Section 8–A are what the agreed statement refers to as "general obligations," or, in other words are debts of a municipality subject to the constitutional debt limits of Section 15. It follows that the revenue obligation securities under the Act, whether for industrial or recreational purposes, not being debts or liabilities under Section 15, do not fall within the terms of Section 8–A. Thus the lawful purposes of the securities are measured by the *Act* without consideration of the constitutional prohibitions imposed by Section 8–A. See Beck: "The 1965 Maine Municipal, Industrial and Recreational Obligations Act," 18 Me.L.Rev. 25, 39, 43 (1966).

■ With reference to the second reason for not granting a hearing, we find nothing in the Opinion of the Justices, supra, to indicate an opinion that revenue obligation securities for industrial projects would not be issued for a proper municipal purpose. The Legislature sought an opinion on securities for recreational purposes, and the answer was properly limited thereto.

[1] "No city or town shall hereafter create any debt or liability, which singly, or in the aggregate with previous debts or liabilities, shall exceed seven and one-half percent of the last regular valuation of said city or town; * * *"

We note that the bill considered by the Justices was amended to read in Section 5339, "Revenue obligation securities issued under this chapter shall be deemed to constitute a proper municipal purpose. * * *"

The language of the Justices at p. 208, 210 A.2d 683 relating to recreational projects and facilities is applicable with equal force to industrial projects and facilities. We see no constitutional differences permitting the one and prohibiting the other category of projects. The Opinion reads at p. 208, 210 A.2d at p. 698:

"All capacities, powers and duties of municipalities are derived from legislative enactments. Hooper v. Emery, 14 Me. 375; Inhabitants of Concord v. Delaney, 58 Me. 309.

"The Constitution contains no inhibitions against the authorization by the Legislature of the municipal issue of revenue obligation securities such as those described in the bill for the acquisition of recreational projects and the sale and lease of such recreational facilities.

"'* * * The power is manifestly legislative in character, and hence must be upheld, unless clearly prohibited to the Legislature by some section or clause of the state or federal constitution. No exercise of the legislative power is to be held thus prohibited unless the prohibition is manifest, beyond a reasonable doubt, as has often been iterated in prior opinions of this court * * *' City of Bangor v. Peirce, 106 Me. 527, 532, 76 A. 945, 947, 29 L.R.A.,N.S., 770."

The plaintiff is entitled to a hearing by the Board forthwith on its request for a certificate of approval.

The entry will be

Case remanded to the Superior Court for entry of a judgment consistent herewith.

RUDMAN, J., did not sit.